UNITED STATES of America

v.

Willie CHILDRESS, et al.

Crim. No. 89–0162 (CRR).

United States District Court, District of Columbia.

March 1, 1990.

548

Jay B. Stephens, U.S. Atty. for the District of Columbia, Barry M. Tapp, David Shertler, and Charles Ambrose, Asst. U.S. Attys., for United States.

Thomas B. Mason and Lisa Greenman of the Public Defender Service, Washington, D.C., for defendant H.S., Jr.

W. Gary Kohlman of Kohlman & Rochon, Washington, D.C., for defendant Constance Perry.

Nina Kraut, Washington, D.C., for defendant Raynice Thompson.

## OPINION

CHARLES R. RICHEY, District Judge.

On February 26, 1990, only ten minutes before the Court was to take the bench and begin jury selection in this second trial of a multi-defendant conspiracy case, the Public Defender Service ("PDS") filed a motion on behalf of its client H.S., Jr. for the disqualification of Mark Rochon, who entered his appearance as one of Constance Perry's attorneys on February 23, 1990. Sometime in the last few weeks, Mr. Rochon entered into a law partnership with Gary Kohlman, Ms. Perry's lead counsel in this case since at least May 1989. After oral argument on this issue, the Court ruled from the bench that Mr. Rochon's prior representation of H.S., Jr. while at PDS creates a potential conflict of interest, which requires his disqualification, but that H.S., Jr.'s waiver as

to Mr. Kohlman allows him to continue representing Ms. Perry. Ms. Perry, through Mr. Kohlman, has filed a motion for reconsideration of this Order, which the Court will deny.

### I. Relevant Facts and Allegations

Pending before this Court are cocaine distribution charges against H.S., Jr. arising out of the identical facts and circumstances underlying the conspiracy charges against Ms. Perry. H.S., Jr. would be a co-defendant along with his alleged co-conspirators in this trial but for his status as a juvenile. H.S., Jr., who will be tried at a later date, has already appeared at least twice before this Court at a hearing to determine whether he should be transferred to adult status for the purpose of criminal prosecution.

H.S., Jr.'s motion alleges that beginning in January 1989, Mr. Rochon—then Trial Chief of PDS—"took an active role in the representation of H.S., Jr."; "was frequently and extensively consulted by the attorneys of record in the various proceedings in which H.S., Jr. has appeared"; and "actually represented H.S., Jr. in matters that occurred prior to the lodging of formal charges." PDS Motion at 2. While the motion concedes that Mr. Rochon never met H.S., Jr., it alleges that Mr. Rochon was privy to confidential attorney-client communications. PDS also stated at the February 26, 1990 oral argument on this issue that Mr. Rochon's involvement in H.S., Jr.'s case was extensive, including assisting in witness preparation for H.S., Jr.'s transfer hearing before this Court and meeting with government counsel to discuss his case as recently as January of this year. Furthermore, PDS specifically said that H.S., Jr. was *not* seeking the disqualification of Mr. Kohlman, and in the afternoon of February 26, 1990 H.S., Jr. submitted to the Court, through PDS, a detailed written waiver of his right to seek Mr. Kohlman's disqualification from this case based on his being Mr. Rochon's law partner.

Mr. Rochon conceded at oral argument that there may be a potential conflict of

interest but stated that there is none in Ms. Perry's view. Moreover, Mr. Rochon denied that he had learned any confidential information that might harm H.S., Jr.'s interests. Ms. Perry's Motion for Reconsideration states that H.S., Jr.'s interests cannot be disserved in this case because he is not a party in this trial and neither the government nor the defense will call him as a witness. The government stated at oral argument that it perceives no conflict of interest between H.S., Jr. and Ms. Perry.

## II. Analysis

(1) Mr. Rochon's Potential Conflict of Interest

▬▬ Although Mr. Rochon's representation of Ms. Perry in this trial may not create a conflict of interest at this time, it certainly does create a potential conflict of interest which, as the trial progresses, may become an actual conflict in violation of the Code of Professional Responsibility ("Code"), adopted by this Court in Local Rule 706(a).[1] The Court holds that this potential conflict of interest exists,[2] because it cannot conclude on this record that Mr. Rochon did not learn any confidential information during his prior representation of H.S., Jr. at PDS.[3]

That Mr. Rochon never met or spoke with H.S., Jr. is by no means dispositive. What matters is whether Mr. Rochon and H.S., Jr. had an attorney-client relationship. The Code states in relevant part that an attorney

shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of his client.

(3) Use a confidence or secret of his client for the advantage of ... a third person....

DR 4–101(B); *accord* D.C.Rules 1.6(a), (b). It is simply incorrect to argue, as Mr. Kohlman does, that when several lawyers in a law firm cooperate and consult each other in the course of representing an individual, an attorney-client relationship exists only with respect to those attorneys who actually met and spoke with that individual.

Even though only Mr. Rochon's colleagues at the "law firm" PDS—and not Mr. Rochon himself—may have had *direct* contact with H.S., Jr., the Court cannot conclude on this record that Mr. Rochon and H.S., Jr. did not have an attorney-client relationship.[4] Before he left PDS, Mr. Ro-

---

**1.** At present, this Court and attorneys practicing in the District of Columbia are governed by the Code. Although the Court is aware that the District of Columbia Court of Appeals has just adopted new Rules of Professional Conduct ("D.C. Rules"), they do not go into effect until January 1, 1991. Moreover, the D.C. Rules do not change the outcome in this case, and the Court will supplement its citations to the governing Code with citations to the D.C. Rules.

**2.** Mr. Kohlman incorrectly argues that the Court can disqualify Mr. Rochon only if he has an *actual* conflict of interest. The Court cannot find any support for such a far-reaching proposition anywhere in the Code or the D.C. Rules. Moreover, in a criminal case, the Sixth Amendment and the Court's inherent power to ensure the orderly administration of justice require the Court to consider whether what is only a potential conflict of interest at the outset of a trial could become an actual conflict as the trial progresses. *See Holloway v. Arkansas,* 435 U.S. 475, 484–85, 98 S.Ct. 1173, 1178–79, 55 L.Ed.2d 426 (1978); *Hernandez v. Mondragon,* 824 F.2d 825, 826 (10th Cir.1987); *United States v. Reese,* 699 F.2d 803, 805 (6th Cir.1983) (per curiam).

**3.** In addition to creating a potential conflict of interest, Mr. Rochon's representing Ms. Perry in this trial after having represented H.S., Jr. in the same general matter while employed at PDS—a government entity—creates the "appearance of impropriety." The Code requires that "[a] lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee." DR 9–101(B); *accord* D.C. Rules 1.11(a) ("A lawyer shall not accept other employment in connection with a matter which is the same as, or substantially related to, a matter in which the lawyer participated personally and substantially as a public officer or employee."). Avoiding the appearance of impropriety provides another ground for the Court's decision to disqualify Mr. Rochon.

**4.** The language quoted in Mr. Kohlman's Supplemental Memorandum from a Comment to the D.C. Rules is inapposite. Not only are the D.C. Rules not yet in effect but the language—"Only those clients with whom the newly-affiliated lawyer in fact personally had a lawyer-client relationship are former clients within the terms of paragraph (b)," D.C. Rules 1.10 Comment 16—relates to a different issue and is

chon was extensively involved in representing H.S., Jr. and worked in close consultation with other PDS attorneys, some of whom must have had direct contact with H.S., Jr. It is highly likely that Mr. Rochon obtained some of H.S., Jr.'s confidences or secrets in the course of consulting with his colleagues at PDS. Moreover, H.S., Jr. and PDS directly contradict Mr. Rochon's statement that he never learned any confidential information from H.S., Jr. In resolving this dispute, the Court must err on the side of protecting confidential information divulged during that most important relationship between attorney and client.

The test for deciding whether a so-called "successive conflict of interest" exists is whether the matter in which an attorney represents a current client is "substantially related" to the matter in which he or she represented a former client. *See National Souvenir Center v. Historic Figures, Inc.*, 728 F.2d 503, 517 (D.C.Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984). Mr. Rochon's prior representation of H.S., Jr. not only is substantially related—but is much closer to identical—to Ms. Perry's matter before the Court. In fact, but for his status as a juvenile, H.S., Jr. would be Ms. Perry's co-defendant in this trial.

Despite the government's failure to recognize any potential conflicts, the Court can envision at least two scenarios arising during the course of the trial in which Mr. Rochon would have to choose between the two ethical duties of defending Ms. Perry zealously within the bounds of the law, *see* Code Canon 7; DR 7-101; DR 7-102; *accord* D.C.Rules 1.3, and not revealing confidential information obtained from H.S., Jr. The government will presumably put on direct testimony implicating Ms. Perry. It is conceivable that Mr. Rochon could effectively rebut that testimony on cross-examination by using a piece of confidential information learned from H.S., Jr., but that

information—if divulged—would harm H.S., Jr.'s interests and could possibly be used against him by the government in some later proceeding. If Mr. Rochon is not disqualified and Ms. Perry is convicted, another possible conflict could arise at her sentencing proceeding, where her interests might best be served by somehow implicating H.S., Jr. using confidential information obtained from him by Mr. Rochon.

While other conflicts may arise, these scenarios demonstrate how this potential conflict of interest could become real and very problematic during the course of this trial. Moreover, the Court is satisfied that the possibility of such a conflict arising is neither fanciful nor minimal. *Assuming without deciding*, for the purposes of this motion, the truth of the government's allegations against H.S., Jr., he was not a minor insignificant participant in the conspiracy. In addition, H.S., Jr.'s name cropped up repeatedly throughout the first *Edmond* trial, which involved many of the same allegations and evidence at issue in this trial. Under these circumstances, and especially in a case of this magnitude, the Court cannot risk the consequences of a conflict of interest arising during trial.

Nor is it improper for this Court to disqualify Mr. Rochon merely because it cannot predict with certainty whether this potential conflict of interest will become a full-blown conflict during trial. As the Supreme Court noted recently in an analogous context:

> Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, *but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly.* The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict,

---

quoted out of context. Rule 1.10 addresses imputed disqualification of an entire law firm when a disqualified attorney has joined the firm. Read in its entirety, the Comment to this rule makes clear that a newly-affiliated attor-

ney's prior representation of a client is imputed to, and disqualifies, the entire new law firm only when the newly-affiliated attorney actually represented the client (and not merely when his former law firm represented the client).

even for those thoroughly familiar with criminal trials.

... [W]e think the District Court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, *but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.*

*Wheat v. United States,* 486 U.S. 153, 162–64, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988) (emphasis added). Relying upon its extensive knowledge of the record in this case and the representations of H.S., Jr. and PDS that Mr. Rochon learned confidential information while representing H.S., Jr., the Court in the exercise of its discretion holds that the risk of this potential conflict of interest burgeoning into an actual conflict during trial is simply too great to be ignored.

If its decision to disqualify Mr. Rochon were more burdensome to Ms. Perry's Sixth Amendment rights, the Court would be more reluctant to grant H.S., Jr. the relief he seeks. However, it is important to note that disqualification of Mr. Rochon has *at most* a minimal impact upon Ms. Perry's right to counsel of choice. "Although of constitutional dimension, a criminal defendant's right to freely choose his counsel *is not absolute* and must give way when required by the fair and proper administration of justice." *United States v. DiTommaso,* 817 F.2d 201, 219 (2d Cir. 1987) (emphasis added). The Court's decision protects Ms. Perry's right to counsel of her choosing by ensuring that she will continue to have the able services of Mr. Kohlman, who has been her lead attorney since at least May 1989.

Similarly, the Court's decision to disqualify Mr. Rochon does not impair Ms. Perry's right to effective assistance of counsel. Although Mr. Kohlman has repeatedly stated that Mr. Rochon's disqualification will require Mr. Kohlman to juggle some of his other professional commitments, he has not demonstrated to the Court that he would be unable to proceed in this case and defend Ms. Perry ably and effectively. Mr. Kohlman has been on notice, at least since this Court's May 30, 1989 Order, that all counsel would have to be prepared to rearrange their other commitments because the Court would be unable to schedule the trials in this case to the complete satisfaction of all the attorneys. Indeed, Mr. Rochon only became Mr. Kohlman's co-counsel in this case within the last few weeks, so Ms. Perry's defense will not be prejudiced by Mr. Rochon's disqualification. The Court regrets any inconvenience to Mr. Kohlman and Mr. Rochon, but on this record it must disqualify Mr. Rochon.[5]

### (2) Mr. Kohlman's Continued Representation of Ms. Perry

█ Finally, under the circumstances of this case, the Court sees no reason to disqualify Mr. Kohlman or permit him to withdraw merely because his law partner has been disqualified. Mr. Kohlman is correct that, *as a general proposition,* law partners are presumed to share information and that therefore one law partner's disqualification is usually imputed to the rest of the law firm.[6] *But,* on this record, Mr. Kohlman should not be disqualified because: (1) H.S., Jr. has specifically waived his right to seek Mr. Kohlman's disqualification and (2) Mr. Kohlman has not learned any confidential information about H.S., Jr. from Mr. Rochon. *See Hernandez v. Mondragon,* 824 F.2d 825 (10th Cir.1987) (trial court properly refused to disqualify petitioner's attorney even though his law partner had briefly represented co-defendant, who pleaded guilty and testified against petitioner; law partnership was formed on first day of petitioner's trial and trial court

---

5. It should be noted that Mr. Rochon (and perhaps also Mr. Kohlman) could reasonably have foreseen that Mr. Rochon's representation of Ms. Perry after having just represented H.S., Jr. in the same matter would create a potential conflict of interest in this case.

6. The Code states that "if a lawyer is required to ... withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with him or his firm may accept or continue such employment." DR 5–105(D); *accord* D.C.Rule 1.10(a).

found that petitioner's attorney and his new law partner never discussed petitioner's case). *Hernandez* is, if anything, a much closer case than the matter before this Court, because there the defendant himself specifically requested another attorney before the jury was sworn, *id.* at 826, whereas here Ms. Perry has never expressed any dissatisfaction with Mr. Kohlman's continuing to represent her.

█ It is axiomatic that, while a trial court does not have to accept the waiver, a defendant may waive a conflict of interest claim. *See, e.g., Wheat v. United States*, 486 U.S. 153, 160–64, 108 S.Ct. 1692, 1698–99, 100 L.Ed.2d 140 (1988); *United States v. Reese*, 699 F.2d 803, 805 (6th Cir.1983) (per curiam); Code DR 5–105(C); D.C. Rules 1.10(d). In this case, H.S., Jr. has signed and submitted a written waiver, which demonstrates to the Court that he understands his right to seek Mr. Kohlman's disqualification and that he waives that right unequivocally. *See* H.S., Jr.'s Waiver of Conflict of Interest as to Gary Kohlman, Esq. (attached hereto and incorporated by reference herein as Exhibit A). The second reason why Mr. Kohlman should not be disqualified is that Mr. Rochon himself stated at oral argument that he has never spoken to Mr. Kohlman about the information he obtained in the course of representing H.S., Jr. Moreover, H.S., Jr. has stated: "I am satisfied that none of the information that Mr. Rochon has about my case has been or will be revealed to Mr. Kohlman or used in the defense of anyone else." Exhibit A at 2. Thus, the record before the Court demonstrates that Mr. Kohlman's continuing to represent Ms. Perry does not create a conflict of interest requiring his disqualification, nor does it create the appearance of impropriety.[7]

The Court recognizes that a defendant's waiver of a conflict of interest, standing alone, does not resolve the issue and that the Court has "an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat v. United States*, 486 U.S. 153, 161, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988). However, in this case, the Court is not confronted with the infinitely more perplexing dilemmas addressed in *Wheat* (two days before trial, defendant moved to replace his attorney with attorney who was representing two of defendant's co-conspirators, one of whom had pled guilty and would likely be a government witness; although defendant and his two co-conspirators all waived right to conflict-free counsel, trial court properly refused waivers and denied defendant's request) and *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (although two law partners each represented co-indictees in separate murder prosecutions and even cooperated with one another to plan their respective trial strategies, there was no actual conflict of interest that violated defendant's Sixth Amendment right to effective assistance of counsel).

The instant case is distinguishable from these cases on several grounds: (1) H.S., Jr. and Ms. Perry are not co-defendants *in the same trial;* (2) H.S., Jr. is not expected to be a witness in this trial; (3) Ms. Perry's counsel Mr. Kohlman has *never* represented H.S., Jr.; (4) Mr. Kohlman's partner Mr. Rochon is not *currently* representing H.S., Jr. nor have the two partners cooperated with one another in terms of planning trial strategies for *both* H.S., Jr. and Ms. Perry; and (5) most important, there is currently only a potential—not an actual—conflict of interest. Under these circumstances, the reasons that may exist in cases like *Wheat* or *Burger* for a trial court to reject a defendant's waiver of counsel's conflict of interest do not exist in this case. By making a rational distinction between Mr. Rochon and Mr. Kohlman and seeking to dis-

---

7. Mr. Kohlman's argument that the Court's decision announced herein would place him in violation of the imputed disqualification provision of D.C. Rules 1.10 is wrong for two reasons. The D.C. Rules, as previously mentioned, do not go into effect until January 1, 1991. Moreover, D.C. Rule 1.10(d) specifically provides that a "disqualification prescribed by this rule may be waived by the affected client." In this case, H.S., Jr. (as the former client of Mr. Rochon, now Mr. Kohlman's law partner) is the affected client, and he has clearly waived any conflict of interest claim as to Mr. Kohlman's continuing to represent Ms. Perry. *See* Exhibit A.

qualify only the former, H.S., Jr. has demonstrated that he can intelligently exercise his right to protect the confidentiality of his communications to Mr. Rochon and his concomitant right to waive Mr. Kohlman's disqualification.

### III. Conclusion

The Court will disqualify Mr. Rochon, ordering him not to divulge any information that he obtained directly or indirectly from H.S., Jr. while he was at PDS, and will ensure that Mr. Kohlman continues to represent Ms. Perry. This prophylactic solution is the only way for the Court to protect the integrity of this trial while also accommodating H.S., Jr.'s important interest in maintaining the confidentiality of any information that Mr. Rochon obtained from him and Ms. Perry's important interest in having counsel of her choice defend her effectively and zealously within the bounds of the Constitution and the Code of Professional Responsibility.

After all, the Court has a responsibility not only to all the defendants as well as the government but also to the orderly administration of justice and the mandate of Rule 2 of the Federal Rules of Criminal Procedure. Any decision other than the one this Court announces herein could thwart this prosecution and require Ms. Perry to be tried later on common evidence, wasting thousands of dollars and the very limited resources of this Court as well as having an impact upon every element of the criminal justice system including, but not limited to, the United States Marshals Service and the Clerk's Office.

If Mr. Kohlman or Mr. Rochon wish to obtain appellate guidance, they may take an interlocutory appeal—which the Court is prepared to certify if necessary—on this record to the United States Court of Appeals for this Circuit. But in the meantime, Mr. Kohlman will be required to continue his representation of Ms. Perry without interruption as he has previously agreed.

An Order in accordance with the foregoing Opinion will be issued of even date herewith.

EXHIBIT A

United States of America

v.

Constance Perry

Crim. No. 89–162 (CRR) # 24

United States District Court
for the District of Columbia

## WAIVER OF CONFLICT OF INTEREST AS TO GARY KOHLMAN, ESQ.

I am H.S., Jr., a juvenile, who is the respondent in United States v. H.S., Jr., No. 89–310M–01. I have been told by my attorneys that Mark Rochon, Esquire and Gary Kohlman, Esquire, of the firm of Kohlman & Rochon represent Constance Perry in the case of United States v. Constance Perry, No. 89–162. I understand that Mark Rochon, Esquire, prior to his employment with Kohlman & Rochon worked for the Public Defender Service. I also understand that Mr. Rochon while at the Public Defender Service worked on my case. I have been told that Mr. Rochon and Mr. Kohlman are now partners in the same law firm. Because Mr. Rochon worked on my case when he was with the Public Defender Service, I do not wish him now to work on another case that is related to my case. I do not wish him to work on behalf of Constance Perry. This is because Mr. Rochon had access to information about my case that I do not want any lawyer working on a case related to my own case to have.

I have also been told that I may ask also that Mr. Kohlman be disqualified from representation of Ms. Perry. I understand that once one member of a law firm must be excused from working on a case, other members of that firm are also subject to being excused from working on that same case. My lawyer has explained to me that I can waive or give up my right to have Mr. Kohlman excused from the defense of Constance Perry. After discussing this matter with my lawyer, I hereby waive or give up the right to have Mr. Kohlman excused from the defense of Constance Perry. I

have discussed this matter fully and believe that the decision that I am now making is in my best interests. The reason for this decision is that I am satisfied that none of the information that Mr. Rochon has about my case has been or will be revealed to Mr. Kohlman or used in the defense of anyone else.

/s/Harry S. Jr.
H.S., Jr., Respondent in 89–310M–01

Date: February 26, 1990

/s/Katherine M. Washington
Youth Treatment Coordinator
Oak Hill Youth Center

### ORDER

In accordance with the Court's Opinion of even date herewith, it is, this 1st day of March, 1990,

ORDERED that Constance Perry's Motion for Reconsideration of the Court's February 26, 1990 oral Order disqualifying her defense counsel Mark Rochon and Raynice Thompson's motion to disqualify Gary Kohlman shall be, and hereby are, DENIED; and it is

FURTHER ORDERED that Mark Rochon's appearance on behalf of Constance Perry shall be, and hereby is, stricken; and it is

FURTHER ORDERED that Mark Rochon shall not discuss with Constance Perry's lead defense counsel Gary Kohlman any information that Mark Rochon obtained *directly or indirectly* from H.S., Jr. while representing him at the Public Defender Service; and it is

FURTHER ORDERED that Mr. Kohlman shall continue to represent Ms. Perry without interruption.