UNITED STATES of America, Plaintiff,

v.

Charles WALLERT, Jr., Defendant.

No. 89 CR 811(S).

United States District Court,
E.D. New York.

March 28, 1990.

---

Andrew J. Maloney, U.S. Atty. (Ruth A. Nordenbrook, Sr. Litigation Counsel, of counsel), Brooklyn, N.Y., for plaintiff.

Patrick M. Wall, New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

In January, 1990, defendant was charged by superceding indictment with sixteen counts of RICO, embezzlement, receipt of unlawful payments, filing a false loan application, mail fraud, tax evasion, and wilful failure to file his tax return. The government moves to disqualify his trial counsel Patrick M. Wall.

I

As charged in the indictment, defendant was a vice president of Local 452 of the Candy and Confectionery Workers of the Bakery, Confectionery and Tobacco Workers International Union (the Local), and served as the administrator for its Pension and Welfare Funds from January 1982 to October 1986. He was an officer of a partnership Benefit Management Associates formed by himself and Frank Salmaggi, another administrator of the Pension Fund. The partnership was organized to service the Local's funds. Defendant was also the controlling figure of Rendezvous Records, which produced and marketed recordings of vocal artists.

Between 1982 and 1987, defendant allegedly conspired with three others to commit a pattern of racketeering activity in violation of 18 U.S.C. § 1962. The three alleged co-conspirators were (1) Frank Salmaggi, (2) Anna Rizzo, the now-deceased president of the Local, the funds' chairperson of the board of trustees, and grandmother of the defendant, and (3) Charles Wallert, Sr., the now-deceased president of the Local, administrator of the Pension Fund, chairperson of the Funds, and father of the defendant.

The alleged purpose of the racketeering enterprise was to enrich defendant and his co-conspirators by embezzling monies and assets of the funds and by receiving kickbacks from those seeking to do business with the funds. Defendant is charged with receiving kickbacks between 1982 and 1984 from several insurance agents who sought business from the funds and from Joseph Kaufman who wished to influence selection of an administrator. The other charged racketeering acts allegedly occurred in 1985 and 1986.

It is pertinent to this motion that defendant is charged with obtaining in 1985 through fraud involving the use of the United States mails a $275,000 mortgage loan from the Freedom National Bank (the Bank). With the proceeds of the loan, defendant purchased a $350,000 house in Long Island. He is also charged with two separate counts that involve this same loan transaction, the making a false loan application and mail fraud.

Wall admits to receiving $10,000 of the proceeds from the loan for brokering the sale of the Long Island house. However, he claims not to know any "details" of the loan application, stating that he only arranged for the defendant to see the house. The government suggests that Wall may have done more, such as advising defendant on how to prepare the application. As evidence of Wall's involvement, the government cites the application itself listing Wall as "Attorney for Purchaser or Mortgagor," the Closing Statement noting payment to Wall of $10,000 as a broker's fee, and the Bank's Loan Settlement Statement, signed by the defendant, listing the $10,000 paid as an attorney's fee.

Wall has represented or is currently representing several parties that have more than a passing interest in this prosecution. He previously represented Salmaggi on two matters, the first in connection with the purchase of an auto-service franchise and the second involving an investigation by the Kings County District Attorney's

office. The government asserts that Salmaggi will be a critical witness at trial. Wall is currently defending Benefit Management Services, Rendezvous Records, and the defendant in a related civil RICO proceeding, *Radutzky v. Wallert*, No. 87–4340 (EHN), 1988 WL 142666. Other facts are stated in the government's affirmations.

## II

Retaining counsel of choice is "a right of constitutional dimension." *See U.S. v. Arrington*, 867 F.2d 122 (2d Cir.1989), *citing United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973). However, the right is not absolute. As the Supreme Court has recently stated, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *See Wheat v. U.S.*, 486 U.S. 153, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). While there is a "presumption in favor of counsel of choice," the courts have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* Thus, the court must "balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility." *See United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982).

Defendant desires to retain Wall as counsel and is willing to waive any right to claim Wall has a conflict of interest. Wall has served as defendant's attorney since 1983, has defended him in, among other matters, a successful appeal of a criminal conviction, the subsequent retrial, and a civil lawsuit related to the criminal matter, and is familiar with the facts of the present case.

The government presents several grounds for disqualifying Wall as counsel for defendant. It says Wall is a witness either sworn or unsworn to defendant's alleged fraud on the Bank. He also formerly represented the co-conspirator Salmaggi, an important government witness, who will have a materially adverse interest from the defendant in this case. Wall is currently representing the partnership of defendant and Salmaggi as well as Rendezvous Records in a related civil RICO case which may materially limit Wall's ability to fully represent the defendant, especially if Salmaggi does not agree to waive the attorney-client privilege. Finally, Wall is subject to a protective order in the civil case and will be unable to abide by the order if he represents the defendant.

## III

The Model Code of Professional Responsibility, although lacking the force of legislation, provides guidance on issues of professional conduct. *Armstrong v. McAlpin*, 625 F.2d 433, 446 n. 26 (2d Cir.1980) (en banc), *vacated on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). The Code provides that when a lawyer "may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client." DR 5–102(B), New York Judicial Law (Appendix).

Because the loan application lists Wall as counsel for the purchaser and the loan settlement statement shows payment to Wall of $10,000 as an attorney fee, an inference is raised favorable to the defendant that he filed the application on the advice of counsel. Thus, Wall "may be called as a witness" by the government to explain his involvement and rebut this inference.

Wall claims that he will testify that he neither knew of the "details" of the loan application nor gave any advice regarding the application. The government may wish to accept this testimony as true or to challenge it and suggest Wall was involved in the allegedly fraudulent act.

If Wall testifies that he was never consulted with respect to the loan, the government would be entitled to examine him in detail as to his previous representation of defendant in other matters both civil and criminal. The purpose of that examination

would be to raise the inference that defendant had confidence in Wall's ability and yet did not wish to reveal the fraudulent nature of the transaction to his trusted counselor.

The government could also question Wall about his "brokering" of the sale, including what information he conveyed that interested the defendant in looking at the house. In addition, Wall might be questioned whether he was paid by Rizzo, not the defendant, for representing the defendant in 1983, or whether defendant substantially underpaid him for legal work Wall did in 1984.

Some, perhaps all, of this would be "prejudicial" to the defendant. To be prejudicial, the projected testimony of a lawyer

> must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony. Furthermore, the moving party bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial.

See Lamborn v. Dittmer, 873 F.2d 522, 531 (2d. Cir.1989) (citations omitted).

The projected testimony would suggest that defendant had falsified information on the loan application. If the jury believed Wall's testimony, it might well wonder what the defendant was hiding by not discussing the application with Wall, his counsel on other legal matters. If, on the other hand, the government established the inference that Wall was not credible and was colluding with the defendant to defraud the bank, Wall's effectiveness as advocate would be severely tarnished and the defense markedly diminished.

Further, Wall's testimony about being underpaid by the defendant would support the inference that defendant was in severe financial straights during 1983 and 1984, damaging evidence of motive for taking kickbacks during this period.

Wall's projected testimony is thus "sufficiently adverse" to defendant's assertion of innocence to raise ethical concerns. Because the testimony goes to material aspects of the government's case, the prejudice would be "substantial." As an important government witness and an advocate for the defendant, Wall would assume a role that could cause the erosion of the "public confidence in the integrity and efficiency of the legal system and the legal profession." EC 9–2, New York Judiciary Law (Appendix).

Moreover, this court must be concerned not merely with defendant's desire to have a particular attorney represent him, but also with the fair administration of justice. By permitting Wall to appear as trial counsel for defendant the court would put the government in potentially a "no-win" position. If it did not call Wall as a witness, the inference would be that the loan transaction was proper because approved by him. If it called Wall as a witness, the jury might well be offended by a searching examination as to his knowledge of the transaction and as to his previous and pending representation of defendant in other matters.

Wall has proposed to stipulate to lack of involvement in the loan application. This would both foreclose the government from suggesting Wall's involvement in the fraud and limit the full development of the events leading up to the filing of the application. The government need not "settle for less than its best evidence." See United States v. Cortellesso, 663 F.2d 361, 363 (1st Cir. 1981).

In any event, almost inevitably, Wall would be considered an unsworn witness. He will have to explain on summation the nature of his representation or lack of representation of the defendant during the transaction. He will have to explain why the defendant had no financial incentive to receive kickbacks in 1984 although he either underpaid Wall or paid him nothing for legal services. The government would be unfairly prejudiced. See United States v. Cunningham, supra, 672 F.2d at 1075.

Defendant has also offered to waive his right to conflict free counsel. However,

waiver would hardly ensure that the trial could be "conducted within the ethical standards of the profession" and "appear fair to all who observe them." *Wheat, supra,* 108 S.Ct. at 1697. Nor would it prevent the government from being prejudiced. Wall's role as advocate would lend immediate credibility to Wall's testimony as a witness, and the government might feel compelled to restrain its examination of Wall, fearing the jury would find aggressive examination of opposing counsel to be improper.

The court has considered the government's other arguments and finds they pose additional possibilities for conflict. The court is convinced that the government is not "manufactur[ing] a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." *See Wheat, supra,* 108 S.Ct. at 1699. The government's motion is granted, and Wall disqualified as trial counsel. He may, however, participate in the defense provided he does not appear at trial and is not identified as counsel of record.

Defendant is instructed to find new trial counsel within 20 days.

So ordered.