**State v. Dillman**
*[Cite as 8 AOA 279]*

*Case No. H-90-7*
*Huron County, (6th)*
*Decided December 14, 1990*

*John R. Keys, for Appellee.*

*Russell V. Leffler, for Appellant.*

This case comes before this court on appeal from a judgment of the Huron County Court of Common Pleas which granted appellee, the state of Ohio's motion to disqualify appellant's criminal defense counsel.

On November 17, 1989, appellant, Patty Dillman, was indicted by the Huron County Grand Jury on three counts alleging three separate violations of R.C. 2913.31(A) (3), forgery, and one count alleging a violation of R.C. 2913.51(A) and R.C. 2913.71(B), receiving stolen property in the form of a negotiable instrument.

Appellant's attorney, Russell V. Leffler, a member of the Huron County Public Defender's Officer ("Public Defenders") appeared with appellant at her arraignment and subsequently filed various motions on her behalf.

On January 30, 1990, appellee filed a motion asking the trial court to remove Leffler from his position as appellant's counsel due to a potential conflict of interest.

While the underlying facts in this case are few in detail, the following undisputed facts can be adduced from the record and the hearing on the motion to remove counsel.

Appellant and Sandra Norwood were arrested in September 1989 for possessing and uttering stolen checks. Apparently, the charges against both defendants resulted from joint criminal conduct. However, both were charged separately and each appointed counsel from the public defender's office. Russell V. Leffler was appointed as appellant's counsel.

Initially, appellant was charged with a single count of uttering a forged instrument. After a preliminary hearing on September 29, 1989, the case against appellant was dismissed on a finding of no probable cause. She was then indicted in November on the previously mentioned four counts. Norwood was also separately indicted on three or four counts of possession and uttering stolen checks. Norwood pleaded guilty to two of the counts and was sentenced. An affidavit of John R. Keys, assistant prosecutor for Huron County, who was assigned the prosecution of both the Norwood and Dillman cases, states that Norwood was willing to testify against appellant and to implicate her in the charged offenses. Other documents in the record of this case indicate that Leffler had obtained handwriting exemplars from both Norwood and appellant for examination by an expert, with favorable preliminary results, and that appellant filed a "notice of alibi."

Even though appellant testified, at hearing, that she was willing to waive her right to independent counsel, the trial court found that a potential for conflict of interest existed, removed Leffler and the public defender's office from the case, and appointed an "outside" attorney to represent appellant.

Appellant then filed a motion for reconsideration asserting that her parents were willing to privately retain Leffler as her counsel. The court overruled the motion for reconsideration.

Appellant now timely appeals the judgment disqualifying Leffler as her counsel and asserts one assignment of error:

"THE COURT ERRED IN REMOVING COUNSEL, RUSSELL V. LEFFLER FROM THE CASE AT BAR."

Although the question of whether the grant of a pretrial motion to disqualify counsel in a criminal context is a final appealable order has not been raised by either of the parties, we note that such an order has been previously found to be a final order by this court. *State v. Schaffer* (Dec. 23, 1983), Huron App. No. H-83-13, unreported. As of the date of this decision, the Supreme Court of Ohio had not addressed this question. Nonetheless, that court has indicated that it would be predisposed to find that the disqualification of criminal defense counsel would be immediately appealable. *State v. Murphy* (1990), 49 Ohio St. 3d 293, 294 note 1. There-

fore, we follow the doctrine of *stare decisis* and determine, that under *Schaffer, supra*, the order in the case before us is final and immediately appealable. But, cf., *Flanagan v. United States* (1984), 465 U.S. 259 (pretrial disqualification of defense counsel in a criminal prosecution is not immediately appealable under 28 U.S.C. Section 1291).

The threshold issue in this case is a determination of the appropriate standard of review. Although there are few reported cases in Ohio involving the disqualification of counsel, it appears that the applicable standard is abuse of discretion. *Ussury v. St. Joseph Hosp.* (1988), 43 Ohio App. 3d 48. See, also, *Wilson v. Mintzes* (C.A.6, 1985), 761 F. 2d 275, 281. A recent United States Supreme Court decision supports this standard. *Wheat v. United States* (1988), 486 U.S. 153. In *Wheat, supra*, at 164, the high court held that the decision to permit the substitution of counsel was within the trial court's discretion and must be, under the circumstances of each case, left primarily to the informed judgment of that court. The *Wheat* court also found that the trial court has "broad latitude" in determining the existence of a conflict of interest and the question of waiver of the right to independent counsel. Thus, while the majority in *Wheat* did not expressly state that "abuse of discretion" was the applicable standard of review in cases where criminal defense counsel has been disqualified, its decision has been interpreted to endorse that standard. *Id.* at 167 (dissenting opinion of Justice Marshall), and 173 (dissenting opinion of Justice Stevens); *Hoffman v. Leeke* (C.A.4, 1990), 903 F. 2d 280, 288 (habeas corpus action). We therefore conclude that the judgment of the trial court in granting the motion to disqualify cannot be overturned absent an abuse of discretion, that is, unless the trial court has conducted itself in an arbitrary, unconscionable or reasonable manner. Accord, *Wilson, supra*. See, also, *Crawford v. State* (Ala. Crim. App. 1985), 479 So. 2d 1349, 1355; *People v. Cumbus* (Mich. App. 1985), 371, N.W. 2d 493, 495-496; *People v. Meng* (Ill. App. 1977), 369 N.E. 2d 549, 553.

For the purposes of this appeal, the public defender's office shall be considered to be the functional equivalent of a law firm in terms of the assertions of conflict of interest. *State v. Gohl* (Mar. 1, 1981), Clark App. No. 1484, unreported, 4. See, also, *Commonwealth v.*

*Evans* (Pa. Super. 1982), 451 A. 2d 1373, 1374; *People v. Willey* (Ill. App. 1978), 378 N.E. 2d 169, 174.

Retaining counsel of choice is a "right of constitutional dimensions." *United States v. Arrington* (C.A.2, 1989), 867 F. 2d 122, 128. Nevertheless, this right is not absolute, but is circumscribed in several respects. *Wheat, supra,* at 159. The "essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* (Citations omitted.) Thus, a defendant cannot insist upon choosing counsel whose representation creates a *potential*[1] for conflicts of interest. *Id.,* at 163; *United States v. Childress* (D.D.C. 1990), 731 F. Supp. 547, 551. See, also, *State v. Johnson* (1980), 70 Ohio App. 2d 152, 158 (applying to joint representation of co-defendants); *State v. Mock* (1972), 32 Ohio App. 2d 82, 84 (applying to indigent co-defendants). This principle is applicable to retained counsel as well as to appointed counsel. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 344.

When alerted by one of the parties that a potential for a conflict of interest exists, the trial court has a duty to investigate in order to ensure that the defendant receives a fair trial. *Wheat, supra,* at 161; *United States v. Reese* (C.A.6, 1983), 699 F. 2d 803, paragraph two of the syllabus; *Johnson, supra,* at 160. If the court concludes that an actual or potential conflict of interest has been demonstrated the court must determine whether the defendant or defendants have voluntarily and intelligently waived the right to choice of independent counsel. *Reese, supra,* at 805; *Johnson, supra.* However, the trial court may, in its discretion, refuse the proffered waiver and disqualify counsel. *Wheat, supra,* at 164; *Childress, supra,* at 552; *Reese, supra,* at 805; *United States v. Wallert* (E.D. N.Y. 1990), 733 F. Supp. 570, 573-574.

Keeping these principles in mind, we now turn to a consideration of appellant's single assignment of error.

Appellant first contends that the trial court erred in disqualifying Russell V. Leffler (and the public defender's office) as her counsel because his continued presence as her attorney creates no potential conflict of interest.

A conflict of interest occurs in a situation where the regard for one duty tends to lead to a disregard of another duty, for example, where a lawyer represents clients with incompatible interests. *State v. Manross* (1988), 40 Ohio St. 3d 180, 182.

In this case, appellant and Norwood were charged with offenses arising from the same transaction or series of transactions. Although they were not co-defendants in that each was scheduled for a separate trial, they were both represented by members of the same public defender's office. Even though defendants whose charged of offenses arise from the same transaction are represented by separate members of that office, they are represented by a single legal entity and the potential for a conflict of interest exists. *Gohl, supra.* Separate public defenders are not independent of one another. *Gohl, supra; Meng, supra,* at 551. Norwood pleaded guilty to two counts and was sentenced. She has agreed to testify against appellant at the latter's criminal trial. The affidavit of Keys indicates that Norwood's testimony will inculpate appellant as the perpetrator of the charged offenses. Appellant, on the other hand, has filed a notice of alibi and secured an expert analysis of handwriting exemplars of both herself and Norwood. Thus, appellant's defense is clearly going to be that she could not have participated in the charged crimes. Norwood's inculpatory statements are, therefore, inconsistent with this defense. See, *Evans, supra,* at 1377.

As appellant's attorney, Leffler is bound to zealously represent his client's interests. DR7-101, EC7-1, EC7-4. However, his position as public defender also imposes a duty to protect the interests of Norwood. This creates a potential conflict of interest as to the public defender's duty of loyalty to his client and may impair his professional judgment. DR5-105(B); DR5-105(A); EC5-1. If Norwood does testify and implicate appellant in the charged crimes, Leffler would be bound to vigorously cross-examine her in order to impeach her testimony. In doing so, he may force Norwood to incriminate herself, leaving her open to new charges, and abridging the duty of loyalty owed to her due to his position as a public defender. In addition, Leffler may have to consider the use of any confidential information as to Norwood that he gained as

a result of his employment in the public defender's office. If he uses this information, he would violate the attorney-client privilege. DR4-101. If he does not utilize that information and/or engages only in a limited cross-examination of this witness, he would violate his duty to represent his client zealously. DR7-101. Finally, permitting any member of the public defender's staff to represent appellant would create an appearance of professional impropriety. EC9-6. The interests of Norwood and appellant are in conflict; therefore, no public defender should represent appellant, either in a public or private capacity. In short, in his position as a public defender, Leffler represents both Norwood and appellant and, potentially, cannot fully satisfy his duties as an advocate to his client.

Appellant next asserts that she waived her right to independent counsel of her choice and that she wants Leffler as her counsel because he has represented her in the past and she trusts him. A reading of appellant's proffered testimony relative to waiver discloses that she was informed of the fact that the public defender's office represented both her and Norwood and that Leffler told her that he would not allow that circumstance to influence his representation. Appellant stated that, despite these circumstances, she wished to retain Leffler as her counsel of choice. Assuming that appellant's waiver was valid, that waiver could be rejected by the trial court if the court found the existence of a potential for conflict which "may or may not burgeon into actual conflict as the trial progresses." *Wheat, supra,* at 163. On the facts of this case, we cannot say that the trial court abused its discretion in finding a potential conflict or in rejecting appellant's waiver. Accordingly, the trial court's decision to disqualify all members of the public defender's office, including Russell V. Leffler, from representing appellant was not arbitrary, unreasonable or unconscionable. Appellant's sole assignment of error is found not well-taken.

The judgment of the Huron County Court of Common Pleas is affirmed. This cause is remanded to that court for a trial on the merits. Costs of this appeal assessed to appellant.

HANDWORK, P.J., GLASSER, J., and RESNICK, J., concur.

[1] If an objection to criminal defense counsel is made prior to trial, the moving party need only show the serious potential for conflict. *Wheat, supra,* at 162. If the question of disqualification of criminal counsel arises after trial, that is, for the first time on appeal, the defendant must prove an actual conflict of interest. *State v. Manross* (1988), 40 Ohio St. 3d 180, syllabus.