OPINION
This timely appeal arises from a Mahoning County Court of Common Pleas jury verdict finding Appellant, Harold Agee, guilty of aggravated murder with a firearm specification. For the foregoing reasons, this Court affirms the trial court judgment.
On May 22, 1994, the Youngstown, Ohio Police Department found James Crafter, Jr., lying face down in the basement of his house located at 2216 Ash Street, Youngstown, Ohio. An autopsy confirmed that Crafter suffered fifteen gunshot wounds. Some of the wounds indicated that Crafter held his hands behind his head when his assailant shot him.
On June 3, 1994, at the Greyhound Bus Station in Youngstown, members of the Mahoning County Violent Crimes Task Force, a specially commissioned police unit comprised of officers from various police departments and empowered to execute arrest warrants, arrested Appellant for the murder of Crafter. Appellant was transported to Task Force offices where he indicated that he wished to make a statement regarding Crafter's murder. Appellant was advised of his constitutional rights and signed a written waiver form. Appellant indicated that on the evening of Crafter's murder, he and Crafter were driving around in Crafter's car and that Crafter owed him several thousand dollars for selling drugs for him. Appellant said he wanted the money in order to leave town with his fiancee and his child in order to escape the drug business. Appellant also stated that he told Crafter that he would go to the police if Crafter did not comply to which Crafter responded that he would kill Appellant.
Appellant stated that he and Crafter arrived at Crafter's house on Ash street where, after entering through the back door, Crafter reached behind the basement door. Appellant believed Crafter kept a shot-gun behind this door. Appellant stated that he then fired at Crafter with two 9mm semi-automatic pistols while Crafter ran into the basement. Appellant ran into the nearby woods where he tripped and dropped one of the guns. Appellant said that he then borrowed a car from an acquaintance and drove to his fiancee's house. He, his fiancee, and his child fled to Norfolk Virginia. Appellant claimed to have discarded the second pistol out of the window of the car somewhere near Williamsburg, Virginia. Appellant signed the statement, affirming that he understood the statement and that it was true and correct.
After he made this statement to the Task Force, officers transported Appellant to the Youngstown Police Department for questioning. Detectives again informed Appellant of his rights and Appellant signed a written waiver. Appellant offered substantially the same story as he told to the Task Force. Appellant also affirmed his ability to read and write English before signing the statement.
The Mahoning County Grand Jury indicted Appellant on one count of aggravated murder with a firearm specification. Appellant moved to suppress the statements he made on the day of his arrest. Appellant claimed that the statements were coerced and that looking at the totality of the circumstances his statements could not be considered voluntary. After a hearing, the trial court overruled the motion. After hearing, counsel for Appellant filed a motion to withdraw upon discovering a potential conflict; he represented an individual identified as an unindicted accomplice to the murder. The trial court granted counsel's request and appointed substitute counsel.
A number of witnesses testified at trial. There was testimony which indicated that Appellant was angry with Crafter for not attending the funeral of Appellant's cousin. There was also testimony which suggested that Appellant was angered that Crafter allegedly posted bail for the suspect in the murder of Appellant's cousin. One witness testified that on the night of Crafter's murder, she saw Appellant hold Crafter at gunpoint in an automobile outside of Crafter's Ellenwood address. When the two departed from the Ellenwood house, another individual held her and others with her at gunpoint, preventing them from warning authorities.
Appellant testified at trial. In his testimony, he admitted that he was with Crafter on the evening of the murder. However, Appellant testified that a third individual entered Crafter's vehicle and demanded that Crafter turn over drugs to him. He testified that they proceeded to the Ash Street address where Appellant heard gunshots and fled the scene, not knowing that Crafter was dead.
The jury found Appellant guilty of aggravated murder with a firearm specification. The trial court sentenced Appellant to life imprisonment with parole eligibility after twenty years, and to three years actual incarceration for the firearm specification to be served consecutively with and prior to the life sentence. Appellant timely appealed to this court raising four assignments of error with the assistance of counsel and two assignments of error, pro Se.
In his first assignment of error, Appellant asserts:
 "The Trial Court erred in denying the Defendant-Appellant's Motion to Suppress Statements to the Youngstown Police Department and the Mahoning County Violent Crimes Task Force, thus denying the Defendant-Appellant his due process of law and right to a fair trial."
Appellant argues that he gave statements to police upon arrest in reliance on a promise that he would be permitted to visit with his fiancee and his child prior to being jailed. Appellant also argues that he gave the statements with no understanding of his rights or the consequence of a waiver thereof.
Whether a statement was made voluntarily and whether the accused voluntarily, knowingly, and intelligently waived his constitutional rights are distinct issues both measured by the "totality of the circumstances" standard. State v. Eley (1996)77 Ohio St.3d 174, 178. Under this standard, a court should consider all relevant factors including the age, mentality, and prior criminal experiences of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment and the existence of threat or inducement. State v. Mason (1998), 82 Ohio St.3d 144, 154. An appellate court is bound to accept the trial court's finding that a pre-trial statement was voluntary if the finding is supported by competent and credible evidence from the suppression hearing.State v. Armstrong (1995), 103 Ohio App.3d 416, 420. In the present case, a review of the transcript of the suppression hearing supports the trial court's decision that Appellant's statements were voluntary and was based on competent and credible evidence.
Appellant signed written waivers prior to giving his statements to both the Task Force and to the Youngstown Police Department. Signing a written waiver of rights is strong proof that the waiver was voluntary. State v. Cooey (1989), 46 Ohio St.3d 20,27. The trial court also heard testimony from Officer Robert Beam of the Task Force who stated that Appellant made arrangements with police through his fiancee to surrender at the Greyhound bus station in Youngstown. (Motion to Suppress Transcript, 6.) (Hereinafter "Supp. Tr.") Beam stated that it was the surrender that was conditioned upon the promise that Appellant be allowed to see his fiancee and his child before being jailed and that this condition was not related to Appellant's confession. (Supp. Tr. 18-19.) Beam also testified that he verbally advised Appellant of his rights and that Appellant indicated his understanding of his rights. (Supp. Tr. 7-8.) Beam stated that after this warning, Appellant said he wished to make a statement concerning Crafter's murder and that prior to giving the statement Appellant signed a written waiver which Beam read to Appellant and which Appellant had the opportunity to read himself. (Supp. Tr. 8-10.) Finally, Beam stated that he asked no questions of Appellant and that he merely transcribed what Appellant stated to him. (Supp. Tr. 37.)
The trial court also heard testimony from Sergeant Cosmo Santillo of the Youngstown Police Department. Santillo stated that he provided Appellant with a written waiver form, the first line of which Appellant read aloud. (Supp. Tr. 43.) This satisfied Santillo that Appellant could read English. (Supp. Tr. 50.) Santillo testified that Appellant read the entire form after which Santillo reread the form in its entirety to Appellant. (Supp. Tr. 43-44). Santillo testified that Appellant indicated he understood his waiver of rights and that he desired to make a statement prior to signing the waiver. (Supp. Tr. 45.) Finally, Santillo indicated that the last question which he asked Appellant was whether Appellant could read and write English, to which Appellant responded "Yes, sir." (Supp. Tr. 51.)
Even though Appellant offered testimony to the contrary, the trial court had before it competent and credible evidence on which to find that Appellant's confessions were voluntary and that Appellant voluntarily, knowingly, and intelligently waived his constitutional rights. It was within the broad discretion of the trial court as the trier of fact to weigh the credibility of the testimony of the several witnesses in determining whether Appellant's statements were voluntary. State v. Lewis (1992),78 Ohio App.3d 518, 521, citing State v. Scott (1980), 61 Ohio St.2d 155. We are therefore bound to uphold the trial court's decision that Appellant's statements were given voluntarily and that they were properly admitted at trial. See, State v. Armstrong, supra.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error alleges:
 "The Trial Court erred in denying the Defendant-Appellant's Motion for Directed Verdict which was made at the close of the State's case, thus denying the Defendant-Appellant his due process of law and right to a fair trial."
Ohio's aggravated murder statute, R.C. § 2903.01 (A), provides that, "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *" Appellant argues that the prosecution failed to present legally sufficient evidence of the identification of the perpetrator, the purposeful action of the perpetrator and the prior calculation and design of the perpetrator.
Crim.R. 29 provides in relevant part that a court will enter judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense charged. Upon review of a trial court's denial of a Crim.R. 29 motion for acquittal, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Williams (1996), 74 Ohio St.3d 569,576, quoting State v. Jenks (1991), 61 Ohio St.3d 259. The record reflects that the prosecution presented sufficient evidence to overcome Appellant's motion for acquittal.
With respect to Appellant's contention that the prosecution failed to identify him as the perpetrator, Appellant admitted to shooting Crafter when both entered the Ash Street house. In addition, the prosecution also presented the testimony of several witnesses who saw Appellant on the day of the murder. Selena Venable testified that she saw Appellant in a car holding a gun to the victim prior to the murder. (Trial Transcript, 427, 429.) (hereinafter Tr.) In addition, Theresa Stanly testified that Appellant was angered because the victim did not attend the funeral of Appellant's cousin and because he believed that the victim provided bail money for the man arrested for that murder. (Tr. 363-365.) Katina Echols also testified that Appellant was angry with the victim. (Tr. 881.) In addition, Echols testified that Appellant indicated that he "was going to do something" to the victim. (Tr. 879.) From the above evidence, considered in a light most favorable to the prosecution, a rational trial of fact could have concluded beyond a reasonable doubt that Appellant was the perpetrator of the crime charged.
With respect to the purposefulness of the act, intent to kill may be deduced from all the surrounding circumstances, including the instrument used and its tendency to cause death if designated for that purpose and the manner of inflicting the fatal wounds.State v. Eley, 77 Ohio St.3d at 180. Appellant confessed that he shot the victim repeatedly with two 9mm pistols when they entered the house on Ash Street. Furthermore, the autopsy revealed that the deceased was shot at least twelve or thirteen times. (Tr. 623.) Several of the entry wounds were consistent with the victims hands being behind his head at the time he was shot. (Tr. 629-631.) Appellant's confession combined with the testimony as to the number of gunshot wounds and the manner in which the victim was shot, are sufficient for a reasonable jury to concluded that Appellant purposely killed the victim.
With respect to prior calculation and design, there is no, "* * * bright-line test that emphatically distinguishes between the presence or absence of `prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." State v. Taylor (1997), 78 Ohio St.3d 15, 20. Despite the lack of a definitive test, guidance is provided in State v.Jenkins (1976) 48 Ohio App.2d 99, 102, where the court of appeals found three factors important in determining the existence of prior calculation and design: (1) Whether the accused and the victim knew each other and, if so, whether that relationship was strained, (2) Whether the accused gave thought or preparation to choosing the murder weapon or murder site, and (3) Whether the act was drawn out or, "an almost instantaneous eruption of events". Jenkins, supra at 102. In the present case, Appellant was well acquainted with the victim as they were in the business of selling drugs together. (Tr. 735-736.) Trial testimony revealed that the relationship was "sour" for several years (Tr. 876) and that Appellant had stated his intention to "do something" to the victim (Tr. 879.) Finally, there was testimony that Appellant held the victim at gunpoint before they left the victim's Ellenwood Avenue house. (Tr. 429.) This testimony alone is sufficient to find that Appellant acted with prior calculation and design. His confessions reinforce a finding of prior calculation and design. Appellant confessed that he drove around with the victim, discussing his desire to leave the drug business and to collect money which the victim owed him. Finally, Appellant confessed that he entered the victim's house on Ash Street with the victim where the murder occurred. The record before use reflects sufficient evidence for a reasonable jury to conclude that Appellant acted with prior calculation and design. Appellant's second assignment of error is therefore without merit.
Appellant's third assignment of error alleges:
 "The Trial Court erred in that the verdict reached by the jury was against the manifest weight of the evidence presented during the trial, thus denying the Defendant-Appellant of his due process of law and right to a fair trial.
Appellant argues that lack of an eye-witness, failure to recover the murder weapons, and the absence of physical evidence linking him to the murder compels the conclusion that the jury's verdict was against the manifest weight of the evidence. The Ohio Supreme Court stated:
 "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Furthermore, when reviewing whether a verdict is against the manifest weight of the evidence, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." State v. Jenks,61 Ohio St. 3d at 273.
In the present case, Appellant testified at trial that he was in the victim's car but that a masked person who entered the car and held the victim at gunpoint actually murdered the victim in an attempted robbery. (Tr. 1423-24.) Appellant also testified at trial that he fled from the scene of the murder while the masked person was distracted and that subsequent to his flight he heard gunshots. (Tr. 1429-30.) These stories diverge greatly from Appellant's confessions. When questioned as to why he admitted to the murder in two separate confessions if in fact he did not commit the murder, Appellant responded that he fabricated the confessions in an effort to protect his fiancee and his child from the real murderer whom he believed would harm them. (Tr. 1474-75; 1477-79; 1500-02.)
Much of the prosecution's evidence directly contradicts Appellant's trial testimony. First and foremost among this evidence are Appellant's confessions in which he admitted he shot the victim multiple times. In addition, Appellant confessed that he sought to collect several thousand dollars which the victim owed him. Testimony at trial also implicated Appellant. Nine millimeter bullets and casings were found at the crime scene and during the autopsy. (Tr. 911; 919-20; 930.) One witness testified that she had seen Appellant with a 9mm pistol (Tr. 878; 885.) and Appellant admitted to owning two such weapons. (Tr. 1413.) In addition, there was testimony that Appellant held the victim at gunpoint on the day of the murder. (Tr. 429.) The medical examiner testified that the victim was shot twelve or thirteen times (Tr. 623) and that several wounds were consistent with a finding that the victim was holding his hands behind his head. (Tr. 619; 631.)
The jury was in the best position to assess the credibility of the witnesses and to determine the weight to be afforded the evidence offered at trial. See State v. Dehass (1967), 10 Ohio St.2d 230. It is apparent that the jury found that the greater amount of credible evidence supported a finding that Appellant was guilty of aggravated murder beyond a reasonable doubt. After a thorough review of the record and testimony presented at trial, we find that a reasonable trier of fact could have concluded that Appellant was guilty beyond a reasonable doubt. Therefore, we must not disturb the jury's verdict. We hold that Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error alleges:
 "The Trial Court erred in denying the Defendant-Appellant's Motion to Disqualify the Prosecutor, thus denying the Defendant-Appellant of "his due process of law and right to a fair trial."
Appellant contends that it was prejudicial error for the trial court not to remove the prosecutor in this case because he interviewed a potential witness and failed to disclose statements taken from that interview to defense counsel. Appellant notes that in a hearing to determine whether defense counsel should withdraw, the trial court admonished the prosecutor for failing to disclose notes taken at that interview. (Transcript of Motion to Withdraw, 42.) (Hereinafter "W/D Tr.") Appellant contends that as a result of the prosecutor's failure to disclose the notes, the prosecutor became a potential defense witness for impeachment purposes. Therefore, Appellant asserts that the prosecutor was required to withdraw pursuant to DR 5-102 of the Ohio Code of Professional Responsibility and Mentor Lagoons, Inc. v. Rubin
(1987), 31 Ohio St.3d 256.
Appellant's reliance on Mentor Lagoons is erroneous. In that case, the issue was whether a trial court could summarily refuse to allow an attorney to testify in a case in which he represented a litigant on the grounds that such testimony may violate ethical standards. Id. at 257-58. Furthermore, the attorney in that case, "* * * had himself sworn in as a witness and began to testify concerning his personal knowledge of the matter in controversy." Id. at 256 (emphasis added) The facts are much different in the present case. Here, the prosecutor had no intention of testifying; nor did his conduct create the potential of his being called as a witness. Independently interviewing a witness is merely trial preparation. At most, the act of interviewing a witness and failing to disclose the information collected could result in court-imposed sanctions which are discretionary with the court under Brady v. Maryland (1951), 373 U.S. 83.
A trial court has broad discretion in determining the existence of a conflict of interest following a motion to withdraw counsel and that determination will not be disturbed unless it constituted an abuse of discretion. State v. Dillman (1990),70 Ohio App.3d 616, 620; see Wheat v. United States (1988),486 U.S. 153. In the instant case, we find no abuse of discretion in the trial court's refusal to require the prosecutor to withdraw. Appellant's fourth assignment of error is without merit.
In his first pro se assignment of error, Appellant alleges:
 "The Defendant-Appellant was denied the effective assistance of trial counsel prior to and during trial thereby denying appellant the right to effective assistance of counsel as guarantee [sic] by the Ohio and United States Constitution mainly article 1, section 10 and 16 of the Ohio Constitution, and the sixth and fourteenth amendment of the United States Constitution."
Appellant argues that his trial counsel failed to object to the state's presentation of evidence that Appellant kidnapped and robbed the victim. Appellant asserts that as he was not charged with kidnapping or robbery the state gained an "unfair and unjust" advantage by presenting evidence of such crimes to the jury without objection.
Appellant has not cited to the record to demonstrate how counsel should have objected to the prosecution's argument nor has he cited any authority to support his general argument. According to App.R. 16 (A) (7), "appellant shall include in its brief * * * all of the following":
 "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.
Furthermore, an appellant must indicate to the appellate court specifically where the trial court's alleged errors may be located in the transcript as a reviewing court is not obliged to search a voluminous record for some evidence of alleged error. See State v. Miller (1988), 56 Ohio App.3d 130, 131. Because Appellant failed to substantiate his claimed error with specific cites to the record, this assignment of error fails.
Notwithstanding Appellant's failure to point to error in the record, Appellant's assignment of error fails on other grounds. A properly licensed attorney is presumed competent to conduct a criminal defense. State v. Hamblin (1988), 37 Ohio St.3d 153,155-56. The party raising the the claim of ineffective assistance of counsel bears the burden of proving that trial counsel's performance fell below an objective standard of reasonableness and that prejudice arose from that performance. See generally,Strickland v. Washington (1984), 466 U.S. 668; State v. Smith
(1985), 17 Ohio St.3d 98, 100. Appellant has not met this burden. Therefore, Appellant's first pro se assignment of error is without merit.
Appellant's second pro se assignment of error alleges:
 "The Defendant-Appellant was denied the right of assistance of trial counsel of his choice whereby the prosecutor Mr. Bailey has subverted the judicial process by manipulating defendant's first trial counsel Mr. John Juhasz to withdraw as counsel for the defendant, due to a conflict of interest that that [sic] Mr. Bailey deliberately created by filing an amended bill of particulars giving the illusion that cedric [sic] Hall was an unindicted accomplice thereby, denying Appellant, counsel of his choieceas [sic] guaranted [sic] by the Ohio and United States Constitution mainly artical [sic] 1, section 10 and 16 of the Ohio Constitution and the sixth and fourteenth amendment of the United States Constitution."
As with the preceding assignment of error, Appellant has failed to comply with App.R. 16 (A) (7). Appellant has not demonstrated any possible error on the record with respect to his contention that the prosecutor filed an amended bill of particulars to manipulate his original trial counsel to withdraw. Therefore, Appellant's second pro se assignment of error is without merit.
However, this assignment of error also fails on other grounds. While retaining counsel of choice is a right, "of constitutional dimensions," State v. Dillman, 70 Ohio App.3d at 621, the, "essential aim of the [Sixth] amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. at 163. Therefore, "a defendant cannot insist upon choosing counsel whose representation creates a potential for conflicts of interest."State v. Dillman, 70 Ohio App.3d at 621. In the present case, there was a potential conflict of interest as witnesses identified another client of Appellant's original trial counsel as being involved in the crime. (W/D Tr. 49-51) Moreover, Appellant fails to note that it was in fact his original trial counsel who initiated the motion to withdraw as counsel pursuant to his ethical obligation. (W/D Tr. 49.) As such, Appellant can not assert the right to representation by his original trial counsel. Appellant's second pro se assignment of error is without merit.
For the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, we affirm the trial court judgment.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 ____________________________ CHERYL L. WAITE, JUDGE