**Magnolia ROSS,
Petitioner-Appellee-Appellant,**

v.

**Robert HEYNE and Theodore L. Sendak,
Respondents-Appellants-Appellees.**

Nos. 80–1318, 80–1394.

United States Court of Appeals,
Seventh Circuit.

Dec. 10, 1980.

David Capp, Merrillville, Ind., for Ross.

David L. Steiner, Asst. Atty. Gen., Indianapolis, Ind., for Heyne et al.

Before SPRECHER, Circuit Judge, WISDOM, Senior Circuit Judge,* and BAUER, Circuit Judge.

BAUER, Circuit Judge.

After exhausting her state court remedies, petitioner Magnolia Ross filed a petition for a writ of habeas corpus in the District Court for the Northern District of Indiana. She claimed that she was denied due process when the state knowingly used false testimony and that she was denied the effective assistance of counsel. The district court granted Ross' petition on the ground that she had been denied due process, but found that she was not denied the effective assistance of counsel. *Ross v. Heyne*, 483 F.Supp. 798 (N.D.Ind.1980).

The state appeals from the district court grant of habeas relief on the due process ground, and Ross cross-appeals from the denial of her ineffective assistance of counsel claim. We affirm the district court's grant of habeas relief on Ross' due process claim and reverse its finding that she was not denied the effective assistance of counsel.

I

Petitioner Ross and five others, Robert Spencer, Floyd Fayson, Edward Gillespie, Leroy Hemphill, and Beatrice Ivy, were accused of assaulting and robbing Father Peter Bankerovich. They were all charged with inflicting injury in the perpetration of a robbery and robbery. The trial court appointed James C. Kimbrough, now Judge of the Superior Court, Lake County, Indiana, to represent Ross and Fayson. Co-defendants Spencer and Ivy retained Judge Kimbrough's law partner, Frederick T. Work, now Judge of the City Court, Gary, Indiana, to represent them.[1] Defendants Spencer, Gillespie, and Fayson pleaded guilty to the robbery count, and the state dismissed the inflicting injury charge. Each was sentenced to ten to twenty-five years imprisonment.[2] Hemphill pleaded guilty to an amended count of armed robbery and was sentenced to ten years imprisonment. The state dropped the charges against Ivy.

Petitioner Ross was the only defendant of the six to go on trial. Co-defendants Spencer and Ivy testified for the prosecution. The combined testimony of Spencer and Ivy was the only evidence against Ross on the robbery charge.[3] Spencer's testimony was the only evidence on the inflicting injury charge. He testified that Ross struck Father Bankerovich with a baseball bat. Tr. at 55, 56, 69 & 70. He also testified that he was not testifying pursuant to any plea agreement.[4] Ross testified that

---

* The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The trial court appointed Nick Sendak to represent Hemphill and F. Lawrence Anderson to represent Gillespie.

2. The terms of imprisonment were later amended to fixed terms of ten years.

3. Father Bankerovich and an eyewitness testified against Ross, but were unable to identify any of the attackers. Tr. at 5 & 13.

4. Q  Before you decided to testify in this case, was it explained to you the penalty for the charges or did they explain the penalty to you, for the charges that you're charged with?
   A  Yes they have.
   Q  And you admitted you inflicted injury in perpetration of this robbery?
   A  Yes, sir.
   Q  Were you promised any kind of consideration if you testified?
   A  No.
   Q  You were not?
   A  No sir.
   Q  You know inflicting injury in the perpetration of a robbery carries a mandatory life sentence?
   A  Yes, I do.
   Q  And you are telling the truth now?
   A  Yes, I am.
   Tr. at 74 75.

although she was with the five co-defendants, she did not participate in either the robbery or the assault. Tr. at 124, 129 & 143.

The jury rejected Ross' version of the events and convicted her on both counts. On June 9, 1969, the trial court sentenced Ross to life imprisonment on the inflicting injury charge and to ten to twenty years imprisonment on the robbery count.

On January 31, 1977, petitioner filed in the trial court a belated motion to correct errors. She claimed that Spencer's testimony that he was not testifying pursuant to a plea agreement was false. Thus, she was deprived of due process when the state knowingly used this false testimony. She also claimed that she was denied the effective assistance of counsel because Judge Kimbrough's representation of her was tainted by his law partner's representation of co-defendant Spencer. A hearing was conducted at which Judge Kimbrough, Judge Work, and James Stanton, the prosecutor, testified that they knew that Spencer testified against Ross pursuant to a plea agreement. Tr. of post-trial hearing at 16, 26 & 55. Notwithstanding this testimony, the trial court found that Ross failed to show any conflict of interest or that Spencer's testimony concerning the plea agreement was false.

The Indiana Supreme Court affirmed. It agreed that Ross failed to show any conflict of interest. The supreme court, however, did not decide whether the court's finding that Spencer's testimony was true was supported by substantial evidence. It found that Judge Kimbrough knew of the agreement before Spencer testified and waived any claim of error by failing to demonstrate at trial that Spencer's testimony was false. *Ross v. State*, Ind., 377 N.E.2d 634 (1978).

The District Court for the Northern District of Indiana also found that Ross had failed to demonstrate any conflict of interest. The court, however, granted habeas relief on Ross' due process claim. It rejected the state court finding of fact and held

that Spencer's testimony about the plea agreement was false. It agreed with the Indiana Supreme Court that Ross had waived error by failing to correct the testimony at trial. Notwithstanding this waiver, the district court held that the prosecutor had an absolute duty to inform the fact-finder of any known false testimony. *Ross v. Heyne*, 483 F.Supp. 799 (N.D.Ind. 1980).

## II

### A

■ The sixth amendment guarantees each criminal defendant the right to the effective assistance of counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The courts have long recognized that this right may be impaired when counsel represents multiple defendants in the same case. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). *See also Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Nevertheless, multiple representation without a showing of conflict of interest is not in itself a violation of the sixth amendment. *United States v. Mandell*, 525 F.2d 671, 677 (7th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976).

■ The typical conflict of interest claim arises when one attorney represents multiple defendants. *See, e. g., Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 338 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Gaines*, 529 F.2d 1038 (7th Cir. 1976). This appeal, however, presents a claim of conflict of interest arising from a trial in which one attorney represented the defendant while his law partner represented co-defendants who testified for the prosecution. We find that an ineffective assistance of counsel claim arising from this type of multiple representation is sufficiently

analogous to the typical multiple representation case to warrant application of the same principles and analysis.

The Supreme Court has proposed an amendment to Rule 44 of the Federal Rules of Criminal Procedure that would require district court judges to inform co-defendants of their right to the effective assistance of counsel and to separate counsel. Additionally, the trial court must "promptly inquire with respect to such joint representation" whenever multiple defendants are represented by the same attorneys or by different attorneys associated in the practice of law.[5] The Supreme Court's proposal of this rule indicates its recognition that the potential constitutional problems attendant to multiple representation are present when different attorneys from the same legal partnership represent co-defendants with conflicting interests. We agree. "The same principles apply where the joint representation is by two members of the same firm." *United States v. Helton*, 471 F.Supp. 397, 399 n.1 (S.D.N.Y.1979). *See also* ABA, Standards Relating to the Administration of Criminal Justice, the Defense Function § 3.5(b) (1974).[6]

### B

■ "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. 1718. An actual conflict would arise where defense counsel is unable to cross-examine a prosecution witness effectively because the attorney also represented the witness. *United States v. Mavrick*, 601 F.2d 921, 931 (7th Cir. 1979). The problem that arises when one attorney represents both the defendant and the prosecution witness is that the attorney may have privileged information obtained from the witness that is relevant to cross-examination, but which he refuses to use for fear of breaching his ethical obligation to maintain the confidences of his client. *See* Code of Professional Responsibility, Canon 4 & DR 4–101(B)(2). "The more difficult problem which may arise is the danger that counsel may overcompensate and fail to cross-examine fully for fear of misusing his confidential information." *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976).

■ A conflict of interest would also exist where one attorney represents co-defendants, and one defendant agrees to provide evidence against the other in return for an advantageous plea bargain. *United States v. Mavrick*, 601 F.2d at 931. Both types of conflicts occurred in this case for two co-defendants testified against Ross in exchange for favorable treatment by the state, and Judge Kimbrough was unable to cross-examine them effectively.

The jury was faced with deciding whose version of the events should be believed—

---

**5.** The Court's proposed amendment to Rule 44 becomes effective December 1, 1980.

(c) Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or *by retained or assigned counsel who are associated in the practice of law*, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his rights to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

(Emphasis added). Of course, this rule applies only to the federal courts. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court held that the sixth amendment requires the trial court to conduct an inquiry concerning possible conflicts of interest where there is *multiple representation* only if "the trial court knows or reasonably should know that a particular conflict exists." *Id.* at 347, 100 S.Ct. at 1717.

**6.** "[L]awyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another."

Ross' or Spencer and Ivy's. Thus, witness credibility was a key factor in this case. If defense counsel had evidence impeaching Spencer or Ivy's credibility, he should have insured that it was before the jury.

Spencer was testifying pursuant to a plea agreement. Judge Kimbrough attempted to elicit testimony to that effect from Spencer, but Spencer testified that he had not been promised any consideration if he testified against Ross.[7] Judge Kimbrough did not introduce any evidence to show that Spencer had an agreement with the state to testify against Ross and to plead guilty to the robbery charge in exchange for the state's promise to drop the inflicting injury charge.[8] This evidence became doubly important after Spencer perjured himself[9] for it demonstrated (1) that Spencer had an interest in placing blame on Ross and (2) that he had lied at least once during his testimony.

Similarly, if Ivy were testifying pursuant to an agreement with the prosecution, Judge Kimbrough should have presented this credibility evidence to the jury.[10] Prior to Ross' trial, the prosecutor informed Judge Kimbrough that all the other co-defendants had agreed to plead guilty in exchange for dropping the inflicting injury charge. Tr. of post-trial hearing at 19. Judge Kimbrough, however, failed to ask Ivy any questions about any plea arrangements with the state.

The record reflects another instance in which Judge Kimbrough might have impeached Spencer's credibility. Judge Kimbrough asked Spencer if he had ever killed anyone. Spencer replied that he had. Tr. at 72. The court sustained the prosecutor's objection to the form of the question. Judge Kimbrough withdrew the question, and the trial court ordered the question and answer stricken and instructed the jury to

disregard them. Judge Kimbrough did not rephrase the question or pursue the matter further.

■ The form of the question was improper, but the question suggests that Judge Kimbrough may have known that Spencer had a prior homicide conviction. If Spencer did have a prior conviction, this information was impeaching and should have been introduced. *Ashton v. Anderson*, 258 Ind. 51, 279 N.E.2d 210 (1972).

At the post-trial hearing on Ross' belated motion to correct errors, Judge Kimbrough testified that he did not depose Spencer or conduct any background investigation. Tr. of post-trial hearing at 34, 35. He did, however, discuss Spencer with Judge Work. Judge Kimbrough candidly admitted that he "was privy to all that was happening to Mr. Spencer through Mr. Work." Tr. of post-trial hearing at 37.

■ Upon examining this record, the district court below found that Ross had failed to demonstrate any actual conflict of interest that deprived her of the effective assistance of counsel. The court concluded that "[t]he most that can be said is that the trial counsel for Ross had a potential problem in cross-examining a witness who was being represented by his law partner." *Ross v. Heyne*, 483 F.Supp. at 804. We respectfully disagree. The "most that can be said" is that the trial counsel had an actual conflict of interest that prevented him from effectively cross-examining Spencer and Ivy and impaired his ability to defend petitioner Ross.

Of course, we can only surmise why Judge Kimbrough failed to impeach Spencer and Ivy when witness credibility was such a crucial factor in this case. The record reveals only one possible reason; he

---

7. *See* note 4 *supra.*

8. Judge Kimbrough testified at the post-trial hearing on the belated motion to correct errors that he was aware of the terms of Spencer's plea agreement before Spencer took the stand. Tr. of post-trial hearing at 36–37.

9. *See* discussion in Section III, *infra.*

10. It is not clear whether Ivy and the prosecution had reached an agreement before she testified, but the state had withdrawn its objections to Ivy's request for bond reduction, and she was released on $1000.00 bond just five weeks before Ross' trial after being retained for six months. Tr. at 50.

feared using information he had obtained as a result of his partnership relationship with Judge Work, which information Judge Work had obtained as a result of his attorney-client relationship with Spencer and Ivy. Judge Kimbrough recognized that he would have had a conflict of interest if he had represented Spencer, Ivy and Ross.[11] The same conflict of interest arose, even though Judge Work represented Spencer and Ivy, and deprived Ross of the effective assistance of counsel.[12]

## III

Respondents Heyne and Sendak appeal from the district court grant of habeas relief on Ross' due process claim. The district court found that Spencer's testimony concerning whether he was testifying pursuant to a plea agreement was false. It also found that defense counsel "in a knowing and intelligent decision on trial strategy" refused to exploit Spencer's perjured testimony. *Ross v. Heyne*, 483 F.Supp. at 801. The court went on to hold that the prosecutor has an absolute duty to inform the fact-finder of known perjury even if the defendant knowingly waives the error. *Id.* at 803. We affirm the district court award of habeas relief on Ross' due process claim

without adopting its proposed absolute duty on the prosecutor.

### A

■ Respondents claim that the court below erred in rejecting the Indiana trial court finding that Spencer's testimony was true.[13] In reviewing a habeas corpus petition, the district court is bound by a state court finding of fact unless the "factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d)(8).

■ Both Judge Work, Spencer's defense attorney, and James R. Stanton, the prosecutor, testified at the post-trial hearing that Spencer testified against Ross pursuant to an agreement with the state. Tr. of post-trial hearing at 36 & 55. We agree with the district court that this record does not support the state court finding that Spencer's testimony was true.

### B

■ In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the Supreme Court emphasized in no uncertain terms that due process is violated when the prosecutor obtains a conviction with the aid of evidence which he knows is false. It is immaterial whether or not the prosecution

---

11. Judge Kimbrough admitted at the post-trial hearing that this type of joint representation would have created a conflict.

> Q Do you feel that when there is, when you are representing co-defendants, you feel at that time that you are ethically bound to advise them of potential conflicts of interest?
> A Yes.
> Q But you did not feel that potential conflict of interest in this case?
> A No.
> Q And you feel that there was a, there would have been a conflict of interests in representing either Beatrice Ivy or Robert Spencer?
> *   *   *   *   *   *
> A I think there would have been, yes.
> Q Did you think that there was a conflict created by your partner's representation of those two co-defendants?
> A No.

Tr. of post-trial hearing at 46.

12. Petitioner also claims that Judge Kimbrough had a conflict of interests in representing her and co-defendant Fayson. Petitioner, however, has failed to demonstrate that any actual con-

flict arising from this multiple representation impaired Judge Kimbrough's representation of her.

13. The trial court in unpublished Findings of Fact and Conclusions of Law found that

> [e]vidence taken at the post-conviction relief hearing indicated that prior to petitioner's trial all of the defendants, including petitioner, were given the opportunity of pleading guilty to the robbery charge in return [for] the State of Indiana promising to dismiss the inflicting injury charge and avoid trial thereby. All defendants, with the exception of Petitioner Ross, accepted that offer by the State. There was no written plea agreement. There was no evidence to indicate that subsequently thereto, other promises or agreements were made with any defendants or attorneys for the defendants in return for testimony by any one of those witnesses against petitioner and the witness Spencer's testimony on pages 74 and 75 of the trial transcript therefore is true, not false.

consciously solicited the false testimony. Furthermore, it is immaterial whether the false testimony directly concerns an essential element of the prosecution's proof or whether it bears on the credibility of the witness.

■ The Supreme Court in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), reaffirmed its holding in *Napue* and held that a defendant is entitled to a new trial if he can establish that the prosecutor intentionally or inadvertently failed to correct materially false testimony relevant to the credibility of a key government witness.

In both *Napue* and *Giglio,* unlike this case,[14] neither the defendant nor defense counsel was aware that the prosecution testimony denying that the witness had a plea agreement with the government was false.

In the years between the Supreme Court decisions in *Napue* and *Giglio,* this Circuit decided a case in which the defendant and defense counsel were aware that the prosecution testimony was false, but failed to correct the evidence or inform the trial court of the error. We held that the defendant was not entitled to habeas relief on his due process claim because he had waived any claim of error. *Evans v. United States,* 408 F.2d 369 (7th Cir. 1969).

> However, the fact that the alleged statement was known to petitioner and his counsel during the trial compelled petitioner to raise this issue then or not at all. When a criminal defendant, during his trial, has reason to believe that perjured testimony was employed by the prosecution, he must impeach the testimony at the trial, and "cannot have it both ways. He cannot withhold the evidence, gambling on an acquittal without it, and then later, after the gamble fails, present such withheld evidence in a subsequent proceeding under 28 U.S.C. § 2255."

*Id.* at 370 (citations omitted).

■ The district court found that *Giglio* undermined the holding in *Evans. Ross v.*

*Heyne,* 483 F.Supp. at 803. We disagree. Nothing in *Giglio* diminished the authority of our decision in *Evans v. United States.* The Supreme Court in *Giglio* was not deciding a case in which the defendant and defense counsel knew at trial that prosecution evidence was false. The holding in *Giglio* merely extended the *Napue* rule to cases in which the prosecution failure to correct false testimony is inadvertent, not intentional. Thus, we hold that *Evans* is still good law in this circuit. *See United States ex rel. Wilson v. Warden Cannon,* 538 F.2d 1272, 1278 n.5 (7th Cir. 1976).

■ In this case, defense counsel Judge Kimbrough knew that Spencer's testimony denying that he was testifying pursuant to a plea agreement was false. Petitioner Ross, however, was unaware of this fact.[15] As discussed in Part II, *supra,* Judge Kimbrough failed to correct this false testimony at trial not because of any conscious defense strategy, but rather because of his fear of revealing information he had obtained from his law partner who obtained the information while serving as Spencer's defense counsel. Given defense counsel's conflict of interest, we do not find that petitioner Ross waived her right to a jury verdict untainted by perjured testimony.

■ We also find that the false testimony was material and that it probably affected the judgment of the jury. Spencer's testimony was the only evidence on the inflicting injury charge. His testimony and that of co-defendant Ivy was the only evidence on the robbery charge. As the Supreme Court noted in *Giglio:*

> Here the Government's case depended almost entirely on Taliento's [Spencer's] testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's [Spencer's] credibility as a witness was therefore an important issue in the case,

---

14. *See* note 8 *supra.*

15. Petitioner Ross did not testify at the post-trial hearing. There is no evidence that Ross

knew at trial that Spencer's testimony was false.

and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it. 405 U.S. at 154–155, 92 S.Ct. at 766.

We affirm the district court finding that Ross was denied due process when the state failed to correct Spencer's false testimony and reverse its finding that Ross was not denied the effective assistance of counsel. The judgment appealed from is

AFFIRMED IN PART AND REVERSED IN PART.