746 A.2d 392

**Donald LETTLEY**

v.

**STATE of Maryland.**

**No. 53, Sept. Term, 1999.**

Court of Appeals of Maryland.

Feb. 15, 2000.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

In this case, Appellant, Donald Lettley, challenges the trial court's denial of defense counsel's motion to withdraw from representation of Appellant based on a conflict of interest. Donald Lettley was convicted of attempted first degree murder, use of a handgun in the commission of a crime of violence, and reckless endangerment. In this appeal, he challenges the adequacy of his trial counsel's representation, contending that his attorney labored under an actual conflict of interest requiring reversal of his convictions. The asserted conflict arose out of his counsel's dual representation of Appellant and another client, who was not charged in the crime at issue but who had allegedly confessed to the attorney that he had in fact committed the crime. The trial court denied counsel's request to withdraw and to permit Appellant to engage other counsel. For the reasons that follow, we shall hold that counsel's representation of Appellant while simultaneously representing the client who allegedly confessed to the crime with which Appellant was charged created a conflict of interest which denied Appellant effective assistance of counsel, requiring reversal of his convictions.

I.

On December 10, 1997, Timothy Smith was shot three times in a parking lot in Baltimore. He survived his injuries, and identified Appellant, Donald Lettley, in a photo array as the shooter. The Grand Jury for Baltimore City returned an indictment for attempted first degree murder and related offenses.

A privately retained attorney entered her appearance for Appellant on February 11, 1998. On August 17, 1998, at the motions hearing the day before trial, counsel advised the court that she had a conflict of interest and requested the court to

strike her appearance. She told the court that an existing client, not a co-defendant of Lettley, whom she presently represented, had confessed to the Smith shooting, and that the client disclosed that information to her in confidence. Counsel advised the court that her ability to represent Lettley was compromised because of the conflict. The following colloquy occurred:

DEF. ATT'Y: Well, I'm not saying that I can't, that under no circumstances could I represent Donald Lettley, what I'm saying is that the conflict compromises my representation of him so that I don't feel that I can represent him to the fullest of my ability because in order to represent him fully I would basically have to roll over on another client using information that was told to me in confidence at a time when I represented that person.

COURT: Yeah, but I mean, this wouldn't have come up anyway. He's obviously a colleague, a friend of your client or he would've never told you, right?

DEF. ATT'Y: That's true.

COURT: And your client's got to know the question is, what's the significance of that, let me tell you something in confidence and you're not saying don't give me something in confidence because I'm representing him.

DEF. ATT'Y: Well, I had no idea what he was going to say. . . . He comes to me and says that he'd like to speak to me in confidence. He's a client and I say sure and—. . . . I had no idea what it was about until he told me. And provided that, you know, that if, God forbid, he is convicted, then that's clearly a basis for a post conviction against me.

In response to the court's questions, counsel told the court that the confessing client did not look like Appellant, although they had features in common. She noted that, but for the conflict, there were various things she could have done in Lettley's defense, but as a result of the conflict, she was unable to do so. As examples, she noted that she could have presented the information to the State's Attorney's Office and requested they investigate the other person; or she could

have encouraged Lettley to go to the police and have the other person investigated. At trial, during cross-examination of the witnesses, she might present the witnesses with a photograph of the other person and ask them to identify that person as the shooter.

The court permitted Lettley to consult with independent counsel on the conflict issue. Independent counsel appeared before the court and represented that he had spoken with Appellant, and that in his opinion, trial counsel had a conflict of interest. Appellant advised the court that he wished to retain different counsel. The judge denied the request for a postponement and advised Lettley that he could proceed with his present counsel or discharge her and proceed pro se. Lettley did not wish to represent himself, and the court ordered counsel to continue as Lettley's attorney.

The court's refusal to permit defense counsel to withdraw from the case was based on three grounds. First, the judge said that although counsel was ethically barred from using the confidential information to help Lettley, no other attorney would have access to that information either; as a result, Lettley's position would not be improved by an attorney substitution. The court said that withdrawal would be inappropriate unless there was a "reasonable foreseeability or expectation that [the representation] is going to be different" with another attorney, and that here, there was no such reasonable expectation. Second, the judge said that based on the information he had learned at the motion to suppress the identification, "[a]ny belief that the defense will be adversely affected is unreasonable because there's no real basis to believe that the person who admitted to defense [counsel] that he shot the victim [is] worthy of belief." In support of this conclusion, the judge stated that there was "no other evidence that directly or indirectly points to another shooter," and that the victim's eyewitness identification of Lettley was reliable. Finally, the court expressed concern that to permit defense counsel to withdraw under these conditions would be

allowing an open invitation to any defendant who is not happy with the judge that he has been assigned to, who is

not happy with the prosecutor who he has in the case, who is not happy with the fact that the witnesses, including the victim, [are] ascertainable and ready, willing and able to testify, to build in a postponement at will by merely having someone contact his or her lawyer and saying "look, I did it. Let me retain you, I did it."

The trial commenced, with the same attorney representing Lettley.

Lettley was convicted by a jury and the court sentenced him to a term of imprisonment of twenty years for attempted murder, and a consecutive term of ten years, the first five without the possibility of parole, for the handgun conviction. He noted a timely appeal to the Court of Special Appeals. We issued a writ of certiorari on our own motion before review by that court.

As a threshold matter, we note that claims of ineffective assistance of counsel ordinarily are best left for review on post-conviction and not on direct appeal. *See Stewart v. State,* 319 Md. 81, 92, 570 A.2d 1229, 1234 (1990). The claim usually arises from a defendant's contention that he was prejudiced by his attorney's deficient performance. The record is usually inadequate for appellate review and devoid of a response from defense counsel concerning the allegations. Where the claim is based on conflict of interest, and the record is clear, however, there is no need to await a post-conviction hearing. *See Austin v. State,* 327 Md. 375, 394, 609 A.2d 728, 737 (1992). The record in this case is clear and all the facts necessary for resolution of the issue are contained in the record. No useful purpose would be served by relegating the issue to post-conviction proceedings.

## II.

Appellant contends that he was denied effective assistance of counsel on the basis that he did not receive conflict-free representation because defense counsel engaged in dual representation of Appellant and another client. He argues that the trial court's refusal to allow him to obtain a new

attorney forced him to trial with counsel who labored under an actual conflict of interest, thereby violating his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. Appellant argues that his counsel's representation was materially limited by her representation of the confessing client because her interest in forestalling any renewed investigation of the crime, for the benefit of the confessing client, was in conflict with her interest in obtaining an acquittal for Appellant. This conflict limited the extent to which counsel could investigate the crime and the manner in which she could cross-examine witnesses at trial.

The State argues that no conflict of interest existed, reasoning as follows. While it was true that counsel was ethically barred from using the confession to help Appellant, a new attorney would have no way of learning of the confession or of the confessing client's existence. Different counsel, therefore, would have been unable to provide representation superior to that of existing counsel. Counsel's representation of Appellant was unimpaired, and consequently, there was no conflict of interest.

### III.

The Sixth Amendment to the United States Constitution[1] and Article 21 of the Maryland Declaration of Rights,[2] as a safeguard necessary to ensure fundamental human rights of life and liberty, guarantee to any criminal defendant the right to have the assistance of counsel. *See Glasser v. United States,* 315 U.S. 60, 69, 62 S.Ct. 457, 86 L.Ed. 680 (1942);

---

**1.** The Sixth Amendment provides in pertinent part:
   In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.
   U.S. Const. amend. VI.

**2.** Article 21 of the Maryland Declaration of Rights provides in pertinent part:
   That in all criminal prosecutions, every man hath a right ... to be allowed counsel....
   Md Decl Rts art. 21.

*Austin v. State,* 327 Md. 375, 381, 609 A.2d 728, 730–31 (1992). This right includes the right to an attorney who is not encumbered with conflicts of interest. *See Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Pressley v. State,* 220 Md. 558, 562, 155 A.2d 494, 496 (1959). A defense attorney's representation must be untrammeled and unimpaired, unrestrained by commitments to others; counsel's loyalty must be undivided, leaving counsel free from any conflict of interest.[3] *See Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Glasser,* 315 U.S. at 70, 62 S.Ct. 457; *Austin,* 327 Md. at 381, 609 A.2d at 731. While joint representation is not a per se violation of the Sixth Amendment, whether a conflict exists must be determined by the facts and circumstances of each individual case. *See Holloway,* 435 U.S. at 482, 98 S.Ct. 1173; *Attorney Griev. Com'n v. Kent,* 337 Md. 361, 379, 653 A.2d 909, 919 (1995); *Austin,* 327 Md. at 386, 609 A.2d at 733. Although ineffective assistance of counsel/conflict of interest claims typically arise in the context of multiple representation, the defendant's right to conflict-free representation is not limited to situations involving multiple representation, but extends to any situation in which defense counsel owes conflicting duties to the defendant and some other third person. *See, e.g., United States v. Soto Hernandez,* 849 F.2d 1325, 1328 (10th Cir.1988).

▮ In order to show ineffective assistance of counsel, a defendant must prove that his or her counsel's representation fell below an objective standard of reasonableness (commonly referred to as deficient performance), and that he or she was prejudiced. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A narrow exception to the *Strickland* standard exists where defendant's ineffective assistance claim is based on a conflict of interest. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. In addressing an ineffective assistance claim alleging conflict of interest, we do

---

**3.** An accused may waive the right to the assistance of counsel. *See Glasser v. United States,* 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). There is no issue of waiver in the case before the Court.

not apply the *Strickland* two-pronged test but rather a more lenient standard that does not require a showing of prejudice. *See id.; Holloway,* 435 U.S. at 489–90, 98 S.Ct. 1173; *Glasser,* 315 U.S. at 75–76, 62 S.Ct. 457; *Austin,* 327 Md. at 381, 609 A.2d at 731.

The Sixth Amendment right to effective assistance of counsel in the conflict-free sense has been addressed by the Supreme Court in three significant cases, which have resulted in two divergent approaches. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway; Glasser.* A brief review of Supreme Court jurisprudence of ineffective assistance of counsel as it relates to conflict of interest will elucidate the two distinct lines of analysis that have developed in this area.

In *Glasser,* which is sometimes referred to as the watershed conflict of interest case, the Supreme Court, in the context of co-defendants, reversed Glasser's conviction primarily on the grounds that Glasser's counsel "struggle[d] to serve two masters" because his conflict of interest violated Glasser's right to effective assistance of counsel. *See Glasser,* 315 U.S. at 75, 62 S.Ct. 457. The Court noted that the possibility of the inconsistent interests of Glasser and the co-defendant was "brought home" to the court, but instead of jealously guarding Glasser's rights, the court created the conflict by appointing, over objection, counsel with conflicting interests, thereby depriving Glasser of his right to have the benefit of undivided assistance of counsel. *See id.* at 71, 62 S.Ct. 457. As to Glasser's prejudice, the Court said:

> To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for [a co-defendant] is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.

*Id.* at 75–76, 62 S.Ct. 457.

In *Holloway,* again in the context of co-defendants at trial, the Supreme Court reversed a conviction on the ground that

counsel's conflict of interest deprived the defendants of effective assistance of counsel. Three defendants were on trial for robbery and rape, in a consolidated trial. Defense counsel asked the court before trial to appoint separate counsel for the three defendants, the request based on the defendants' statements to him that there was a possibility of a conflict of interest in each of their cases. The trial court denied defendants' requests and the case proceeded to trial. All three defendants were convicted. The Supreme Court noted that trial counsel, as an officer of the court, alerted the court to the conflict, and focused explicitly on the probable risk of a conflict of interests. *See Holloway,* 435 U.S. at 484, 98 S.Ct. 1173. The trial court, however, "failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Id.* The Court held that this "failure, in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioners of the guarantee of 'assistance of counsel.'" *Id.* Recognizing that joint representation is not per se violative of the constitutional guarantee of effective assistance of counsel, the Court nonetheless said that "since the decision in *Glasser,* most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding conflict of interests, should be granted." *Id.* at 485, 98 S.Ct. 1173.

Turning to the question of proof of prejudice, the *Holloway* Court concluded that prejudice is presumed, regardless of whether it was shown independently. *See id.* at 489, 98 S.Ct. 1173. The Court "read the Court's opinion in *Glasser* ... as holding that whenever a trial court improperly requires joint representation over timely objection reversal is automatic." *Id.* at 488, 98 S.Ct. 1173. The Court recognized that joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing, and that a rule requiring a defendant to show that a conflict, which he and his counsel tried to avoid by timely objection, prejudiced him in some specific fashion would not be susceptible of

intelligent, evenhanded application. *See id.* at 490, 98 S.Ct. 1173. Again rejecting a harmless error standard, the Court said:

> But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.

*Id.* at 490–91, 98 S.Ct. 1173.

Two years later, the Supreme Court again addressed the conflict of interest issue, in *Cuyler*. In *Cuyler*, the potential conflict of interest was not brought to the trial court's attention. Three co-defendants were jointly represented by two attorneys. Sullivan did not object to the multiple representation until after he was convicted and he moved for post-conviction relief on the grounds that he was denied effective assistance of counsel. In establishing a standard to be applied to cases in which the potential conflict is not brought to the trial court's attention, the Supreme Court held that "[i]n order to establish a violation of the Sixth Amendment, a defendant *who raised no objection at trial* must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. 1708 (emphasis added). In this context, "the possibility of conflict is insufficient to impugn a criminal conviction." *Id.* at 350, 100 S.Ct. 1708. Commenting on *Glasser*, the Court held:

> Glasser established that unconstitutional multiple representation is never harmless error. Once the Court concluded that Glasser's lawyer had an actual conflict of interest, it

refused to 'indulge in nice calculations as to the amount of prejudice' attributable to the conflict. The conflict itself demonstrated a denial of the 'right to have the effective assistance of counsel.' 315 U.S., at 76, 62 S.Ct., at 467. Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

*Id.* at 349–50, 100 S.Ct. 1708. Contrary to the resolution in *Holloway*, Sullivan, who did not object before trial, was required to show that an actual conflict of interest adversely affected his lawyer's performance.

To date the Supreme Court has never squarely resolved the question of whether proof of an adverse effect of a conflict of interest is required to reverse a conviction. *See e.g., Bonin v. California*, 494 U.S. 1039, 1043, 110 S.Ct. 1506, 108 L.Ed.2d 641 (1990) (Marshall, J., dissenting). Numerous cases in other jurisdictions addressing conflict of interest conclude, however, that the time at which a conflict of interest, or a potential one, is raised and is brought to the court's attention governs how this issue is to be treated. *See, e.g., Selsor v. Kaiser*, 22 F.3d 1029, 1032 (10th Cir.1994); *United States v. Fish*, 34 F.3d 488, 492 (7th Cir.1994); *Hamilton v. Ford*, 969 F.2d 1006, 1011 (11th Cir.1992); *People v. Burchette*, 257 Ill.App.3d 641, 195 Ill.Dec. 550, 628 N.E.2d 1014, 1023 (1994); *State v. Wille*, 595 So.2d 1149, 1153 (La.1992), *cert. denied*, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992); *State v. Marshall*, 414 So.2d 684, 687 (La.1982); *State v. Lemon*, 698 So.2d 1057, 1061 (La.Ct.App.1997); *State v. Dillman*, 70 Ohio App.3d 616, 591 N.E.2d 849, 852 n. 1 (1990). *See also* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 8.2, at 414 (1986) ("The different, and lesser, showing that obtained reversal in *Holloway* depended on the lawyer's trial objection there."). The cases reason that when a possible conflict exists, but the trial court is not advised of the conflict in a timely manner, the *Cuyler* standard applies. In order to establish a violation of the Sixth Amend-

ment right to effective assistance of counsel, the defendant must show that an actual conflict of interest adversely affected his lawyer's performance. On the other hand, when the defendant advises the trial court of the possibility of a conflict of interest, the *Glasser/Holloway* standard applies. "[A] court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat v. United States*, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The trial court is required to "either appoint separate counsel, or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Holloway*, 435 U.S. at 484, 98 S.Ct. 1173. If the trial court fails to take "adequate steps" or improperly requires joint or dual representation, then reversal is automatic, without a showing of prejudice, or adverse effect upon the representation.[4]

---

**4.** In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court primarily addressed the right to effective assistance of counsel in the context of defective performance of counsel. Addressing the prejudice requirement, the Court discussed the presumption of prejudice in certain Sixth Amendment contexts, such as the actual or constructive denial of the assistance of counsel altogether, and various kinds of state interference with counsel's assistance. *See id.* at 692, 104 S.Ct. 2052. *See also, e.g., United States v. Cronic*, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Prejudice will be presumed, for several reasons. The *Strickland* Court deemed prejudice to be so likely in those circumstances that a case-by-case inquiry into prejudice is not worth the cost. In addition, those circumstances involve impairments of the Sixth Amendment right that are easy to identify, and for that reason and because the prosecution is directly responsible, easy for the government to prevent.

The *Strickland* Court went on to discuss ineffective assistance claims in the context of conflict of interest allegations, concluding that such a "claim warrants a similar, though more limited presumption of prejudice." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Embracing a less stringent rule for conflict of interest claims than for general ineffective assistance claims, quoting *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. 1708, the Court, in *dictum*, stated:

[T]he rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'

*Strickland*, 466 U.S. at 692, 104 S.Ct. 2052.

Discussing the test for review on appeal, the Supreme Court of Kansas held:

Thus, when a possible conflict exists, but the trial court is not advised of the possibility, the limited presumption set forth in *Cuyler* applies, and the defendant, in order to establish a violation of his Sixth Amendment right to the effective assistance of counsel, must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. See *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718. On the other hand, we hold that where the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to insure that the defendant's Sixth Amendment right to counsel is not violated. In this instance, a showing that there is an actual conflict of interest will result in automatic reversal. See *Holloway*, 435 U.S. at 489, 98 S.Ct. at 1181. Prejudice to the defendant is presumed, and reversal of the defendant's conviction is automatic.

Under *Cuyler*, in the face of a silent record, where the defendant makes no objection before the trial court, the possibility of a conflict of interest is not sufficient to impugn a criminal conviction. 446 U.S. at 348–50, 100 S.Ct. at 1718–19. The defendant must show that "counsel actively represented conflicting interests" and that the "conflict of interest adversely affected his lawyer's performance." Once an actual conflict and an adverse effect are shown, a defendant "need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349–50, 100 S.Ct. at 1719.

*State v. Jenkins*, 257 Kan. 1074, 898 P.2d 1121, 1129 (1995).

In *State v. Wille* the Supreme Court of Louisiana considered the relationship between conflicting interests and effective assistance of counsel under the Sixth Amendment, analyzing in particular the language of *Cuyler* and *Holloway*. The court noted that in *Holloway*, the defendant raised the conflict issue prior to trial and in *Cuyler* the defendant did not raise

---

These comments must be read in conjunction with *Glasser* and *Holloway*. *See Selsor v. Kaiser,* 22 F.3d 1029, 1033 (10th Cir.1994).

the issue of conflict until after his trial. *See Wille,* 595 So.2d at 1153. In a *Cuyler* scenario, in order to demonstrate a violation of Sixth Amendment rights, a defendant must show that an actual conflict adversely affected his or her lawyer's performance. *See id.* Reiterating that "the time at which the conflict of interest issue is raised is determinative of whether the *Holloway* or *Cuyler* standard is to be applied," the Louisiana Supreme Court said:

If the conflict is raised before trial, the *Holloway* standard applies. If raised after trial, the [*Cuyler* ] standard applies. If the trial court is alerted during trial that an actual conflict of interest exists, the judge must take steps to investigate the nature of the conflict and to form an appropriate remedy.

*Id.* The court concluded that because the defendant did not raise the question of conflict until after his trial, the more stringent standard of *Cuyler* applied, requiring demonstration of actual conflict adversely affecting the lawyer's performance. *See id.*

In Maryland, this Court last considered an ineffective assistance of counsel claim in the context of a criminal trial, the conflict of interest variety, in *Austin v. State.* In that case, the conflict of interest arose when two law partners continued to represent codefendants in a criminal case after one defendant accepted a plea offer and agreed to testify against the other. The designated administrative judge for the Circuit Court for Baltimore City, during the course of a hearing for a postponement, recognized that "a conflict situation, very clearly," existed if the codefendant testified against Austin and both were represented by partners in the same law firm. *Austin,* 327 Md. at 378, 609 A.2d at 729. The designated administrative judge imposed a gag order, instructing counsel for the pleading defendant to say nothing to Austin's counsel about what was going on in the case. *Id.* Before the trial judge, the State represented that there was a conflict of interest. Austin's counsel protested, claiming that there was no conflict, and there was no need for the gag order. *Id.* at 378–79, 609 A.2d at 729. The gag order was not lifted, and the

case proceeded to trial. The codefendant testified for the State at Austin's trial, incriminating Austin. Austin was convicted and the Court of Special Appeals affirmed. We granted certiorari.

We reiterated that "[t]he constitutional right to counsel, under the Sixth Amendment and Article 21 of the Maryland Declaration of Rights, includes the right to have counsel's representation free from conflicts of interest." *Id.* at 381, 609 A.2d·at 730–31. We held that "an actual conflict of interest existed ... where defense counsel's law partner represented a codefendant who testified adversely to the defendant." *Id.* at 390, 609 A.2d at 735.

Judge Eldridge, writing for the Court, discussed the prejudice prong ordinarily necessary to establish a violation of the constitutional right to the assistance of counsel. He wrote:

> The Supreme Court has pointed out, however, that it "is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests" and that "it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest." *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984). Therefore, a court, having found the existence of an actual conflict of interest, should refuse " 'to indulge in nice calculations as to the amount of prejudice' attributable to that conflict." *Cuyler v. Sullivan, supra,* 446 U.S. at 349, 100 S.Ct. at 1719, 64 L.Ed.2d at 347, quoting *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, 702 (1942).

*Id.* at 381–82, 609 A.2d at 731. We also quoted the "adversely affected his lawyer's performance" language of *Cuyler,* noting that many cases in other jurisdictions appear to have taken the position that an adverse effect upon defense counsel's representation is inherent in circumstances such as those presented in the case. *See id.* at 391, 609 A.2d at 735. We expressed no view on that issue, because we found that the imposition of the gag order clearly affected counsel's represen-

tation of Austin, and reversal was required. *See id.* at 392, 609 A.2d at 736.

As in *Austin,* we need not tread in those murky waters because Appellant in the instant case established that his counsel labored under an actual conflict of interest that had an adverse effect on his counsel's representation. Appellant timely objected to dual representation and asked the court to permit him to retain different counsel. Defense counsel presented to the trial judge her basis for asserting a conflict of interest, and the trial court conducted an inquiry. We believe, however, that the trial court's decision to require counsel's continued representation was improper. The record is clear that there was indeed an actual conflict of interest which endangered Appellant's right to undivided loyalty and assistance. In order to properly defend Appellant counsel had, by implication, to incriminate her other client.

The instant case presents a more egregious conflict than that presented in *Austin.* Although dual representation in a criminal case is not per se an actual conflict of interest, defense counsel represented two clients with adverse interests. Counsel had privileged information from one client that was certainly relevant to cross examination of witnesses in Lettley's case, but she could not use that information because to use it would breach her ethical obligation to maintain the confidence of another client. *See Austin,* 327 Md. at 387, 609 A.2d at 737, (commenting that when one attorney represents both the defendant and a prosecution witness, the attorney may have privileged information from the witness relevant to cross-examination, but which the attorney cannot use because it breaches the attorney's duty to maintain client confidences) (citing *Ross v. Heyne,* 638 F.2d 979, 982–85 (7th Cir.1980)); *Commonwealth v. Martinez,* 425 Mass. 382, 681 N.E.2d 818, 825 (1997) (stating that the "guarantee to effective assistance of counsel, untroubled by conflicts of interest, is intended not only to prevent the problems that can spring from contemporaneous divided loyalties, but also to prevent prejudice to a defendant arising from an attorney's treatment of privileged information"); *Commonwealth v. Toro,* 432 Pa.Super. 383, 638

A.2d 991, 996 (1994) (recognizing that conflict of interest may arise if counsel reveals privileged communications of former client). If counsel does not use the information in cross-examining witnesses at Lettley's trial, she violates her duty to represent her client zealously. The interests of the confessing client and Lettley are in conflict. An actual conflict is evidenced by "a tie with either a person or entity ... which would benefit from an unfavorable verdict for the defendant." *People v. Spreitzer*, 123 Ill.2d 1, 121 Ill.Dec. 224, 525 N.E.2d 30, 35 (1988).

The State argues, and the trial judge ruled, that because counsel was ethically forbidden to use the confessing client's confidential information in defense of Appellant, and because no other lawyer would have had access to that confidential information, there was no conflict of interest. We disagree. The conflict is inherent in the divided loyalties. It mattered little that new counsel would not be privy to the confidential information known to Appellant's counsel; a conflict nonetheless existed.

Defense counsel argued to the trial court that she would be constrained in her cross-examination of witnesses because of the conflict. The constraint is self-evident. The Supreme Court, in *Glasser*, observed that the inability of defense counsel to cross-examine highlighted "the cross-purposes under which he was laboring." *See Glasser*, 315 U.S. at 73, 62 S.Ct. 457; *Attorney Griev. Com'n. v. Kent*, 337 Md. 361, 381, 653 A.2d 909, 919 (1995). In *Ross v. Heyne*, the United States Court of Appeals for the Seventh Circuit discussed the impact of counsel's impaired ability to cross-examine because of dual representation of a prosecution witness and the defendant. The court said:

The problem that arises when one attorney represents both the defendant and the prosecution witness is that the attorney may have privileged information obtained from the witness that is relevant to cross-examination, but which he refuses to use for fear of breaching his ethical obligation to maintain the confidences of his client. The more difficult problem which may arise is the danger that counsel may

overcompensate and fail to cross-examine fully for fear of misusing his confidential information.

638 F.2d at 983. A like concern existed on the part of Appellant's trial counsel.

In the context of an attorney discipline action, we noted recently:

"As a general rule, whenever one codefendant makes a statement which is exculpatory or which inculpates a codefendant, they cannot be represented by the same attorney because a conflict exists.

"Thus, there also is a conflict where one defendant gives a statement saying that the other was the instigator of the crime, they were involved in a separate crime together, one indicates a desire to become a prosecution witness, one says that the other is more guilty, or the statements raise inconsistent defenses."

*Kent,* 337 Md. at 376–77, 653 A.2d at 917 (quoting JOHN W. HALL, JR., PROFESSIONAL RESPONSIBILITY OF THE CRIMINAL LAW-YER § 13.27 (1987)). The same rationale applies where one client confesses to a crime that another client is charged with having committed.[5]

---

**5.** The Maryland Rules of Professional Conduct prohibit an attorney from representing a client if the lawyer has a conflict. Rule 1.7(b) provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

A lawyer's responsibilities to one client materially limit the lawyer's representation of another if the clients' interests diverge with respect to a material course of action, resulting in a division of the lawyer's loyalty.

The American Bar Association's Standards for Criminal Justice include a standard addressing conflicts in the realm of multiple representation of codefendants, which reads in pertinent part:

(a) At the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or

Finally, we address the trial judge's concern for abuse and defense-created fabricated conflicts in order to secure post-ponements. The Supreme Court addressed a similar fear in *Holloway*. Recognizing that such risks are inherent in the adversary system, the Court pointed out that courts have abundant power to deal with abuse by unscrupulous defense attorneys [6] as well as the ability to explore "the adequacy of the basis of defense counsel's representation regarding a conflict of interest." *See Holloway*, 435 U.S. at 486 n. 10, 487, 98 S.Ct. 1173. In that case, defense counsel represented to the trial court that he had received confidential information from one client that would interfere with his ability to examine his other clients on the witness stand. *See id.* at 476–78, 98 S.Ct. 1173. The state argued that "unscrupulous defense attorneys might abuse their 'authority,' presumably for pur-poses of delay or obstruction of the orderly conduct of the

---

any other matter that might be relevant to the defendant's selection of a lawyer to represent him or her.

(b) Except for preliminary matters such as initial hearings or applica-tions for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in repre-senting multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several codefendants except in unusual situations when, after careful investigation, it is clear that:

(i) no conflict is likely to develop;

(ii) the several defendants give an informed consent to such multi-ple representation; and

(iii) the consent of the defendants is made a matter of judicial record. In determining the presence of consent by the defendants, the trial judge should make appropriate inquiries respecting actual or potential conflicts of interest of counsel and whether the defendants fully comprehend the difficulties that an attorney sometimes encoun-ters in defending multiple clients.

In some instances, accepting or continuing employment by more than one defendant in the same criminal case is unprofessional conduct.

1 AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE, The Defense Function, § 4–3.5 (2d ed.1980, 1986 Supp.).

6. It is grounds for disciplinary action for an attorney to create error purposely by knowingly representing clients with adverse interests. *See, e.g. Florida Bar v. Vernell*, 374 So.2d 473, 474 (Fla.1979).

trial." *Id.* at 486, 98 S.Ct. 1173. The Court rejected this view, stating that courts should credit such representations of defense counsel. The Court observed that an attorney representing two clients "is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Id.* at 485, 98 S.Ct. 1173 (citation and internal quotation marks omitted). The Supreme Court commented that "since the decision in *Glasser,* most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted." *See id.* Attorneys' representations are trustworthy, the Court reasoned, because "attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually under oath." *Id.* at 486, 98 S.Ct. 1173 (citation and internal quotation marks omitted). "When a considered representation regarding a conflict in clients interests comes from an officer of the court, it should be given the weight commensurate with the grave penalties risked for misrepresentation." *Id.* at 486 n. 9, 98 S.Ct. 1173. Where there is reason to believe that "an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics." *Id.* at 486–87, 98 S.Ct. 1173.

The Supreme Court's view is echoed by Professor Wolfram. Recognizing the conundrum, he wrote:

It is not entirely satisfactory to have a defense lawyer make broad and thus self-proving assertions about the requirements of ethical duties. The lawyer may be overly scrupulous or may be trying to force a continuance to enable a new lawyer to become familiar with the case. Yet if the lawyer is required to supply a sufficiently detailed basis for his or her concern about the need to cross-examine or the need to refuse to do so, that also creates a serious risk of exposing confidential communications of one or both clients. The absence of any clearly correct course of action in such a case suggests the great desirability of separate representation as

an automatic response whenever the lawyer objects and plainly underscores the statement in *Holloway* that judges should normally accept at face value a lawyer's assertion that a conflict of interest exists.

WOLFRAM, *supra,* at 416 (footnote omitted).

In the case before us, there has been no suggestion by the State or the trial judge that defense counsel was guilty of any misrepresentation. The trial judge did, however, consider that Appellant and the allegedly confessing client could have conspired to create grounds to postpone the trial. We conclude that, in order to give force to the Supreme Court's view that defense counsel's representations about conflicts of interest should be credited, courts should give credence to defense counsel's judgment that a confidential statement by a client should be taken seriously. Defense counsel is in the best position to make this judgment, and will often be ethically barred from giving the court sufficient information to make it independently.

The trial court abused its discretion in denying defense counsel's motion to withdraw her representation and violated appellant's Sixth Amendment right to effective assistance of counsel. As a result of the trial court's denial of defense counsel's motion to withdraw, Appellant was denied conflict-free representation.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED TO THAT COURT FOR A NEW TRIAL. MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY COSTS.*